The PEOPLE of the State of Colorado, Petitioner,

v.

Michael C. WILBUR, Respondent.

No. 93SC641.

Supreme Court of Colorado, En Banc.

Feb. 13, 1995.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., A. William Bonner, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner.

John Turner, Colorado Springs, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari review of the court of appeals' opinion in *People v. Wilbur,* 873 P.2d 1 (Colo.App.1993), holding that the trial court's statements concerning a probable release date constituted an enforceable expectation or promise that entitled Michael C. Wilbur (Wilbur) to be released after serving nine years. We reverse the court of appeals' decision and hold that the trial court's statements estimating respondent Wilbur's probable release date did not create an enforceable promise between the trial court and the defendant.

## I.

On June 16, 1983, Wilbur and his co-defendant were jointly charged with several counts each of first-degree kidnapping, § 18–3–301, 8B C.R.S. (1986); aggravated robbery, § 18–4–302, 8B C.R.S. (1986 & 1994 Supp.); first-degree sexual assault, § 18–3–402, 8B C.R.S. (1986); menacing, § 18–3–206, 8B C.R.S. (1986); first-degree burglary, § 18–4–202, 8B C.R.S. (1986); and a crime of violence, § 16–11–309, 8A C.R.S. (1994 Supp.).[1]

On November 13, 1984, a providency hearing was held in which a plea agreement was reached. Wilbur entered pleas of guilty to one count each of first-degree burglary, aggravated robbery, first-degree sexual assault, first-degree kidnapping, and crime of violence in exchange for a stipulated sentence of eighteen years and the dismissal of the menacing charge.

Wilbur, who was represented by counsel at the hearing, informed the court that he decided to accept the eighteen-year sentence because it was "for the 18 years and because I am guilty." He stated that defense counsel had advised him of the possibility of receiving a sentence longer than eighteen years if convicted at trial, and that he believed it was "in [his] best interest to go ahead . . . and take an 18–year sentence." Wilbur additionally stated that he was advised that he would waive the right to have his sentence reconsidered by pleading guilty. Lastly, Wilbur asserted that neither the prosecution nor defense made any threats or promises in exchange for his plea other than the imposition of an eighteen-year sentence.

The trial court advised Wilbur of his rights pursuant to Crim.P. 11, the elements of each crime, and the minimum and maximum pen-

---

1. These charges were filed pursuant to an incident on May 31, 1983. Wilbur and his co-defendant (not a party to this action) were driving in their vehicle on I–25 and picked up a hitchhiker. During the course of this ride, they robbed the hitchhiker and demanded more money from him. The hitchhiker did not have any more money. Wilbur and his co-defendant then directed the hitchhiker to take them to the hitchhiker's par-

ents' home in Colorado Springs to get more money. The hitchhiker complied, and Wilbur and his co-defendant jointly burglarized the residence and robbed the hitchhiker's parents and two of their guests of their money and valuables. Wilbur additionally raped one of the guests, and he and the co-defendant repeatedly threatened to harm all of the occupants if they did not give them any money.

alties for each offense. The trial court then questioned Wilbur as to his understanding of the plea agreement. The trial judge thereupon informed Wilbur that, as a result of the plea bargain proceeding, he would receive a sentence of eighteen years. Wilbur replied that he understood the nature of the charges and the consequences of his plea. During the course of this advisement, the following colloquy ensued between the trial court and Wilbur:

THE COURT: Okay. So you still think it's in your best interest to go ahead with this and take an 18–year sentence?

MR. WILBUR: Yes, sir.

. . . .

THE COURT: [Y]ou're going to be going down to the State Penitentiary to the Department of Corrections in Canon City for 18 years.

Now in reality, with the good time law the way it is, you'll get—that will be about a nine year sentence, and you [will] also get credit for this time you've been in the County Jail. You get over two years of your sentence basically knocked off already 'cause you've been in the County Jail for over a year. . . .

. . . .

So that's almost three years, then, on your sentence that's already been served, with the good time law the way it is.

But you are going to be down there for a significant length of time under today's standards.

MR. WILBUR: Yeah.

THE COURT: Do you understand that?

MR. WILBUR: Yes, sir.[2]

The prosecutor did not object to the trial court's comments concerning the estimated time for parole eligibility under the existing sentencing scheme. Wilbur then formally tendered his guilty plea to each crime, which pleas the trial court found were knowingly, voluntarily, and intelligently made. Wilbur was thereafter sentenced to eighteen years' incarceration for first-degree sexual assault and first-degree kidnapping, and to sixteen-year sentences for aggravated robbery and first-degree burglary, to be served concurrently.

In January 1989, after Wilbur had entered his plea, the Parole Board reinterpreted section 17–2–201(5)(a), 8A C.R.S. (1986), to mean that parole for various classes of sex offenders was discretionary, rather than mandatory.[3]

In August 1991, Wilbur filed a Crim.P. 35(c) motion requesting the trial court to specifically enforce the nine-year plea bargain.[4] He argued that he was not properly advised of his sentence because the court failed to correctly inform him of the minimum time that must be served before becoming eligible for parole. Wilbur contended that he bargained for a nine-year sentence and that his expectations were not met when he was not granted parole after he had served nine years.

A hearing on Wilbur's Crim.P. 35(c) motion was held on April 30, 1992. At the hearing, Wilbur's former counsel argued that, prior to sentencing, he had advised Wilbur that, given the mandatory parole practice, Wilbur would most likely serve only approximately one-half of the agreed-upon sentence.

2. The judge's comments were based on his understanding which was consistent with the parole eligibility guidelines.

3. At the time of Wilbur's sentencing, the Parole Board's practice was to grant mandatory parole—that is, upon reaching a fixed date computed by deducting vested good time and earned time credits from the sentence, the defendant would be paroled. However, in *Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990), we approved the change in policy of the Parole Board and interpreted § 17–2–201(5)(a) to mean that a person convicted of sexual assault is not eligible for mandatory parole.

4. At the hearing on Wilbur's Crim.P. 35(c) motion to enforce the plea bargain, defense counsel reserved the right to file a motion to vacate or withdraw Wilbur's guilty plea. The trial court denied Wilbur's motion to enforce the plea bargain, and defense counsel never subsequently filed a motion to withdraw the plea. Because defense counsel never pursued this pleading before the trial court, we need not address this alternative argument now being raised in Wilbur's briefs before this court.

On May 1, 1992, the trial court denied the motion, holding that Wilbur had bargained for and received an eighteen-year sentence. The court concluded that, while Wilbur may have expected to serve only nine years, the court had made no guarantees that he would be released after serving only nine years.

On appeal, the court of appeals reversed the trial court, holding that Wilbur was entitled to specific performance of his nine-year plea bargain. The court found that the trial court's statements, about serving nine years before being eligible for parole, were made during Wilbur's Crim.P. 11 advisement, and thus constituted part of the terms of the plea agreement. The court of appeals stated that the trial court gave Wilbur no assurances or guarantees that he would serve only nine years of his eighteen-year sentence. The court found, however, that the trial court's statements constituted an "express" or "explicit" assurance of being paroled after serving nine years.

We granted certiorari to review the following two questions:

[1] Whether statements made by the trial court during a providency hearing as to the anticipated release date of a defendant with good time and earned time can constitute an enforceable promise so as to entitle him to specific performance of that anticipated release date.

[2] Whether the court of appeals erred [in] apparently holding that the defendant actually relied to his detriment upon the court's statements to be entitled to specific performance of that "promise."

5. Respondent has cited no cases, nor have we found any in our research, which would provide direct support for his contention that the trial court's statements estimating the time for parole eligibility constituted an enforceable promise between the trial court and Wilbur.

6. In *Fisher*, we held that a defendant, who furnished incriminating information concerning his commission of several crimes during a videotaped interview to the police, was entitled to specific performance of a *governmental* promise that this information would not be used against him in any criminal proceeding, upon which the defendant reasonably and detrimentally relied.

## II.

The People argue that Wilbur bargained for an eighteen-year sentence, and that he knowingly accepted the stipulated sentence to avoid the possibility of receiving a significantly longer sentence if the case proceeded to trial. The People further contend that the defendant was not entitled to specific performance of a nine-year sentence because the trial court's statements about Wilbur's serving only nine years were only an estimate of the time Wilbur would have to serve before becoming eligible for parole, and did not constitute an enforceable promise.

In contrast, Wilbur asserts that the plea agreement was for nine years of imprisonment and therefore he has a right to enforce that agreement.[5] Accordingly, Wilbur contends that the court of appeals' decision should be affirmed and that he should be resentenced on the sexual assault conviction.

In denying Wilbur's Crim.P. 35(c) motion to enforce the plea bargain, the El Paso County District Court found:

All of the evidence indicates that the bargain was for an 18-year sentence and that although there [were] expectations of release prior to the serving of the full 18 years, there was no guarantee, nor was there any bargain requiring that [t]he Court enter any order at this time which would require the release of Mr. Wilbur after serving nine years.

The court of appeals, relying upon *People v. Fisher*, 657 P.2d 922 (Colo.1983),[6] and *People v. Macrander*, 756 P.2d 356 (Colo.1988),[7] determined that the trial judge's statements were part of the plea agreement between Wilbur and the prosecution, and that Wilbur

7. In *Macrander*, we held that the defendant did not have to communicate his acceptance of a plea agreement to the prosecutor in order to be entitled to specific enforcement of an agreement that prohibited the prosecution from filing additional charges from an independent case not included within the terms of the plea agreement. Rather, we concluded that the defendant's waiver of the right to a preliminary hearing constituted "detrimental reliance" on the plea agreement sufficient to give rise to the defendant's right to enforce the agreement and that specific performance of the plea agreement was the appropriate remedy.

had relied to his detriment upon these statements, entitling him to specific performance.[8] *Wilbur*, 873 P.2d at 3. Specifically, the court of appeals reasoned:

Here, it is undisputed that, prior to accepting defendant's plea, the providency court interpreted the agreement to require that defendant, if he qualified under the good time law, serve no more than one-half of the sentence that the People and defendant had agreed upon. The court's interpretation of the agreement formed part of the advisement given to defendant, and it was only after receiving such advice that defendant's plea was tendered and accepted. Accordingly, the trial court's contemporaneous interpretation of the plea agreement must be deemed to reflect the terms of the agreement as both parties understood them, and it was based on this interpretation that defendant proceeded to enter his plea of guilt.

Given these circumstances, therefore, it is true only in a technical sense that defendant was given no guarantee that he would serve only nine years. Subject to defendant's conduct being such that he would accumulate good time, he was expressly informed that he would be released after serving nine years. Hence, the undisputed evidence does not support the district court's determination that defendant was not given assurances upon this subject at the time of the plea agreement.

We conclude, therefore, that with respect to defendant's conviction for first degree sexual assault, his legitimate expectations, based upon the providency court's explicit assurance as to the legal effect of the plea agreement, have not been met. With respect to that conviction, therefore, the defendant must be resentenced to a term commensurate with the terms of the plea agreement as interpreted by the providency court.

*Id.* at 3.

We are now called upon to determine whether the court of appeals' literal interpre-

tation of the trial court's comments concerning the amount of time Wilbur would serve before being eligible for parole was consistent with the meaning a reasonable person might attach to comments made independent of the plea agreement. *See Macrander*, 756 P.2d at 360 ("[O]ur task at this stage is to determine whether the defendant's interpretation of the government's promise was reasonable, and therefore we focus on the meaning a reasonable person might attach to the language of the agreement.").

■ In determining whether Wilbur's plea bargain for the eighteen-year sentence was voluntary, the court must interpret the terms of the plea agreement in light of the parties' reasonable expectations at the time the agreement was made. *People v. Romero*, 745 P.2d 1003, 1010 (Colo.1987), *cert. denied*, 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988). Our task is not to rewrite the agreement but to construe it consistently with the intent of the parties and the defendant's right to be treated fairly by the government. *Id.*

The United States Supreme Court has held that a trial court's inaccurate estimates of a defendant's probable release date do not make his guilty plea involuntary nor do they create any enforceable expectation of a lesser sentence. In *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the Supreme Court held that a sentencing judge has no enforceable expectations with respect to the actual release date of a sentenced defendant short of his statutory term, and that a judge's incorrect assumptions as to the future course of parole proceedings do not constitute grounds for collateral attack upon an otherwise lawful sentence. *Id.* at 186, 190, 99 S.Ct. at 2241, 2243; *see also Ex parte Williams*, 704 S.W.2d 773, 775–76 (Tex.Crim.App.1986) (finding that a court has no duty to advise an individual of ineligibility for probation; even where the

---

**8.** In both *Fisher* and *Macrander*, we held that the defendant gave something up as consideration to make the promise made by the prosecution enforceable. We do not consider *Fisher* or *Macrander* dispositive on the issue presented before us under the facts of this case. In both of those

cases it was the prosecution who made the promises inducing the plea agreement, whereas here, the statements made by the trial court during the providency hearing concerning a probable release date are at issue.

court has volunteered incorrect information about such, the defendant must still produce affirmative evidence that he was misled or harmed by the inaccurate advisement); *Trujillo v. United States,* 377 F.2d 266 (5th Cir.) (finding that the judge was not required to advise the defendant of parole ineligibility since noneligibility for parole is not a consequence of pleading guilty, but a withholding of legislative grace), *cert. denied,* 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967). We find *Addonizio* controlling under the facts of this case.

In *People v. Sorenson,* 824 P.2d 38, 40 (Colo.App.1991), the court of appeals held that a trial court's initial sentence, irrespective of the Parole Board's change in the mandatory parole policy for sex offenders, created no enforceable expectation by the defendant to entitle the defendant to post-conviction relief.

In *People v. Sandoval,* 809 P.2d 1058 (Colo.App.1990), the defendant pleaded guilty to aggravated robbery with a stipulated sentence of sixteen years, which was the maximum sentence he could receive for that offense. In exchange, the prosecution agreed to withdraw a motion adding two habitual criminal counts. The trial court advised Sandoval that he could be sentenced to as little as two years but under no circumstances could he be sentenced to more than sixteen years. The court failed to advise Sandoval that he was subject to a mandatory one-year parole term in addition to the sixteen-year maximum sentence. The court of appeals held that the trial court's failure to advise Sandoval of the mandatory parole term did not affect the voluntariness or knowingness of Sandoval's plea, but it did unfairly compel him to accept a longer sentence than that for which he had bargained. The court of appeals determined that the appropriate remedy was not a withdrawal of the plea, but rather reducing the sentence to the maximum sixteen-year sentence contemplated by the plea agreement.

Further, in *People v. Lacey,* 723 P.2d 111 (Colo.1986), we affirmed a four-year sentence notwithstanding the trial court's advisement during the providency hearing that the defendant, if on probation, would be subjected to a two- to eight-year sentence rather than a four- to eight-year sentence. We held in *Lacey* that the misstatement did not affect the substantial rights of the defendant since the court's misstatement of the governing law involved only the minimum sentence and the defendant was correctly informed of the maximum sentence upon a finding of aggravating circumstances.

■ Here, the record indicates that, in entering the plea agreement, it was the intent of both parties that Wilbur would plead guilty to four felonies, and that one other felony would be dismissed in exchange for a sentence of eighteen years. Prior to accepting Wilbur's plea of guilty, the trial court recited the terms of the parties' plea agreement and reiterated the eighteen-year sentence to be imposed. Wilbur raised no objection. Further, Wilbur expressly stated to the court that he decided to accept the plea offer "for the 18 years and because I am guilty." Wilbur voluntarily bargained for the eighteen-year plea agreement in exchange for the prosecution's agreement to forego a trial and to dismiss one of the felony charges. The plea agreement was the result of negotiations between the prosecution, Wilbur, and Wilbur's defense counsel. The trial court's statement concerning the estimated time to be served prior to becoming parole-eligible did not affect the voluntariness of Wilbur's guilty plea.

The record discloses that Wilbur affirmatively acknowledged that he understood the nature of the offense to which he entered his guilty plea. The record therefore supports the trial court's conclusion that Wilbur was adequately advised of the nature and elements of the offense in compliance with Crim.P. 11, and understood the possible consequences of his guilty plea. To interpret the trial court's statements suggesting a possible early parole as an element of the parties' plea negotiations, and constituting an agreement between the court and the defendant for a nine-year sentence, would undermine the plea agreement as the parties understood it.

It is therefore our opinion that the trial court's statements concerning a probable release date did not create an enforceable promise between the trial court and the de-

fendant. Even assuming that Wilbur was misadvised by the trial court, Wilbur knew he faced a possible sentence of eighteen years although he may have understood that to mean nine years under the then-existing Parole Board practice. We therefore hold that Wilbur received exactly what he bargained for. Further, because we do not construe the trial court's statements concerning a probable release date as constituting an enforceable promise, we need not determine whether Wilbur reasonably and detrimentally relied upon the trial court's statements sufficiently to make his expectations of a nine-year release date enforceable.

We reverse the decision of the court of appeals, and remand the case to the court of appeals to reinstate the trial court's order denying defendant Wilbur's Crim.P. 35(c) motion.

LOHR, J., does not participate.