The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Jason L. MACRANDER, Defendant-Appellee.

No. 86SA232.

Supreme Court of Colorado, En Banc.

March 28, 1988.

Robert R. Gallagher, Jr., Dist. Atty., Bruce H. Rabun, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Linda Perkins, Deputy State Public Defenders, Denver, for defendant-appellee.

ROVIRA, Justice.

This case involves a dispute over the existence and terms of an alleged plea

agreement between the People and the defendant, Jason L. Macrander. The district court found that the parties had entered into a valid plea agreement under the terms of which the charges in Arapahoe County District Court Case No. 85CR954 would be dismissed subject to Macrander's pleading guilty to one class 4 felony in Arapahoe County District Court Case No. 85CR1153, as well as to one class 4 felony in a related Denver District Court case. The court also determined that the defendant's due process rights would be violated if the agreement were not enforced, and accordingly, it dismissed the charges against Macrander in Case No. 85CR954. We affirm.

## I.

On September 30, 1985, Macrander was arrested by Englewood police officers investigating reports of a prowler in a residential area. He was subsequently charged with several counts of burglary and criminal trespass in Arapahoe County District Court Case No. 85CR1153.[1]

At the time of Macrander's arrest, the Englewood Police Department had accumulated between 50 and 70 reports of similar burglaries committed by an unknown person whom authorities dubbed the "Englewood cat burglar." Because of similarities between Macrander's and the Englewood cat burglar's methods of operation, Detective John Collins questioned Macrander regarding the unresolved burglaries. Although Macrander denied being the Englewood cat burglar, he confessed to having committed at least three burglaries. After Collins promised that Macrander's cooperation "would be duly noted to the Court," the defendant agreed to show Collins the houses he had burglarized. Shortly thereafter, Macrander identified two houses he had burglarized in Englewood and showed Denver detectives a house he had burglarized in Denver.[2] Englewood authorities la-

1. The record does not contain a copy of the charges in Case No. 85CR1153, and thus we rely on the characterization of the parties as to the general nature of those charges.

2. In mid-October of 1985, Detective Collins again questioned defendant and promised defendant that he would not be charged with any offenses to which he confessed during that interrogation. At that point, defendant admitted

ter filed a complaint against defendant on October 24, 1985, Case No. 85CR954, charging Macrander with two counts of second-degree burglary, § 18–4–203(2), 8B C.R.S. (1986), class 3 felonies, and one count of theft, § 18–4–401(2), 8B C.R.S. (1986), a class 2 misdemeanor. Denver authorities filed similar charges against Macrander arising out of his activities in Denver.[3]

A preliminary hearing in Case No. 85CR1153 was set for December 5, 1985 before the Arapahoe County Court. Deputy District Attorney Alan Molk and Robert Steiert, defendant's counsel, stipulated on the record to the following agreement:

MR. STEIERT: The agreement is that Mr. Macrander has agreed to waive his preliminary hearing here today. In return, the district attorney is agreeing to make the following offer to Mr. Macrander. That is that they are willing to drop all charges against Mr. Macrander, except for one Class 4 felony, to which Mr. Macrander would plead guilty. And there will be a stipulation that any sentence Mr. Macrander would receive in that Class 4 felony would run concurrent to any sentence he would receive in a case now pending in Denver.

. . . .

Let me clarify the offer, after speaking to Mr. Molk. The offer is that the district attorney's office will not file any new charges here in Arapahoe County against Mr. Macrander which would arise out of the incidents mentioned in this case or out of any of the incidents to— which Mr. Macrander has already discussed with members of law enforcement here in Arapahoe and in Denver; and furthermore, that they would not file any charges arising out of any cases on which they first became involved in looking at Mr. Macrander as a suspect, be-

cause of his cooperation with law enforcement agencies, or any statements he has made.

MR. MOLK: The whole idea behind that is, if for some reason detectives from police agencies from Arapahoe County speak to the defendant in this case and he cooperates with them with regard to his involvement or someone else's involvement in burglaries or criminal practices, that we would not file charges against him, if he is the one who initiated and gave us the information. If, however, the police department independently arrives at certain information that leads to the defendant's involvement and they arrive at that information independently of anything he has provided to the police department, then we would be able to file those charges against him. It's a little convoluted.

At the time the defendant and the People entered into the agreement in Case No. 85CR1153, neither Steiert nor Molk was aware that charges in Case No. 85CR954 had already been filed and were still pending.[4] When Steiert became aware of Case No. 85CR954 in January 1986, he contacted the district attorney's office and requested that the charges in that case be dismissed pursuant to the plea agreement. The district attorney's office, however, took the position that the plea agreement only prohibited the People from filing additional charges after December 5, 1985, and that because the charges in Case No. 85CR954 were filed in October, they were not included in the terms of the plea agreement.

The defendant moved for an order enforcing the plea agreement and to dismiss Case No. 85CR954. After hearing testimony from Collins, Steiert, and Molk, and reviewing the transcript of the December 5, 1985 hearing, the district court found it "clear and unequivocal that there exists a

to being the Englewood cat burglar; none of the charges at issue was filed as a result of information the defendant provided during that questioning.

3. The record does not disclose the precise charges filed against Macrander by Denver authorities.

4. Although Molk had been advised previously that charges were filed in Case No. 85CR954, he had apparently forgotten about those charges by the time the preliminary hearing in Case No. 85CR1153 was held.

plea bargain. That plea bargain was that the Defendant would plead to two class 4 felonies, one in Denver and one in Arapahoe County." The court also found that the defendant had waived his right to a preliminary hearing and that he had entered a plea of guilty to a class 4 felony in Denver in March 1986. Holding that the defendant's right to a preliminary hearing had a constitutional foundation, the court concluded that the defendant's due process rights would be violated unless the plea agreement were enforced and thus the only relief appropriate was to order specific enforcement of the plea agreement. Accordingly, it dismissed the charges in Case No. 85CR954 and set arraignment in Case No. 85CR1153 for a later date, at which time the defendant would plead guilty to one class 4 felony and the remaining charges in Case No. 85CR1153 would be dismissed.

The People assert three grounds for error: First, the trial court abused its discretion in finding that there was a valid plea agreement; second, any plea agreement was unenforceable; and third, even if an enforceable plea agreement existed, the trial court erred in ordering specific performance as a remedy for the prosecution's breach.

## II.

The basis for enforcing promises the prosecution makes to a defendant is found in the due process clause of the fourteenth amendment and its requirement that an accused "be treated with 'fairness' throughout the [criminal] process...." *People v. Fisher,* 657 P.2d 922, 927 (Colo. 1983), quoting *Cooper v. United States,* 594 F.2d 12, 16 (4th Cir.1979); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1979). That right to fairness requires, in turn, that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. The rationale of *Santobello* clearly extends beyond those cases in which a defendant's reliance takes the form of a guilty plea. *Fisher,* 657 P.2d at 927–30 (defendant relied on government's prom-

ise by participating in videotaped interview during which he discussed his commission of several crimes).

 *Santobello* and *Fisher* both reflect the fundamental principle that while agreements between a defendant and the government may resemble formal contracts, it is the defendant's detrimental reliance on the government's promise—and not the presence or absence of a valid contract—that gives rise to a constitutional right to the government's performance of the contract:

> Although contractual analogies will most often provide a reliable inclusive test for the existence of a constitutional right and violation, they do not necessarily provide an equally reliable exclusive test.... "[C]onstitutional decisions cannot be made to turn in favor of the government on the fortuities of communications or on a refusal to accord any substantive value to the reasonably induced expectations that the government will honor its firmly advanced proposals."

*Fisher,* 657 P.2d at 927, quoting *Cooper,* 594 F.2d at 17. Thus, an agreement's failure to satisfy the requisites of a formal contract does not preclude enforcement of the prosecution's promise. Similarly,

> [A] plea bargain standing alone is without constitutional significance; it in itself is nothing more than a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or some other constitutionally protected interest.

*Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984).

In light of those principles, our inquiry in determining whether a plea agreement should be enforced is directed to the following question: Did Macrander suffer some detriment in reasonable reliance on a promise by the government? If he did, then we must determine whether the appropriate remedy is to order the government to fulfill its promise.

### A.

 The People proffer three arguments purporting to show that the prosecution did

not make a binding agreement with Macrander to dismiss the charges in Case No. 85CR954: First, because there was no "meeting of the minds" with respect to the disposition of the charges in Case No. 85CR954, there was no agreement governing those charges; second, the defendant did not accept the prosecution's offer, and thus no agreement was formed; and third, the government rescinded its offer before the defendant relied on the offer to his detriment.

Turning to the first argument, the People contend that the prosecution did not promise that the charges in Case No. 85CR954 would be dismissed after Macrander performed his part of the agreement. In support of their construction of the agreement, the People rely on Steiert's recitation of the prosecution's promise "that the district attorney's office will not file any new charges here in Arapahoe County against Mr. Macrander." The People suggest that the promise not to file any "new" charges only prohibited the prosecution from filing charges after December 5, 1985, and because Case No. 85CR954 was filed in October 1985, it was not within the scope of the People's promise.

Although a literal reading of the plea agreement might support the People's interpretation, our task at this stage is to determine whether the defendant's interpretation of the government's promise was reasonable, and therefore we focus on the meaning a reasonable person might attach to the language of the agreement. *In re Arnett*, 804 F.2d 1200, 1202–03 (11th Cir. 1986); *United States v. Quan*, 789 F.2d 711, 713 (9th Cir.1986), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 770 (1987); *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir.1976).

Here, the defendant reasonably could have interpreted the People's promise as including the charges in Case No. 85CR954. The crux of the defendant's claim is that when he agreed to waive his right to a

preliminary hearing, he understood that the only crimes for which he would be prosecuted were one class 4 felony in Denver and one in Arapahoe County, and that he would plead guilty to each of those charges. Although he was unaware that charges had been filed in Case No. 85CR954, he perceived that his subsequent guilty pleas would limit the extent of his liability for the crimes the police knew he had committed to that point.

The language Steiert used in expressing the agreement is unequivocal and expresses exactly that understanding: Case No. 85CR954 charged Macrander with the burglaries of the houses that he identified for Detective Collins, and those charges therefore arose "out of ... cases on which [the police] first became involved in looking at Mr. Macrander as a suspect, because of his cooperation with law enforcement agencies...." The prosecution did not object to Steiert's characterization of the agreement, and Macrander was entitled to rely on the plain meaning of the words used.[5]

■ The People argue further that no agreement was reached because Macrander failed to accept the prosecution's offer. As noted above, it is the defendant's detrimental reliance on the plea agreement—and not his communication of acceptance of that agreement—that gives rise to his right to enforce the agreement. Because the defendant's alleged failure to accept the prosecution's offer is therefore irrelevant, we reject the People's second argument.

■ The People also claim that the prosecution "rescinded" its offer prior to Macrander's detrimental reliance thereon. Although the People recognize that Macrander waived his right to a preliminary hearing long before the prosecution's attempted rescission of the plea agreement, they contend that the waiver did not implicate any constitutional rights and, therefore, cannot constitute detrimental reliance sufficient to prevent the People from rescinding the agreement. We have held previously that a defendant's detrimental reliance need not

---

5. In fact, the trial court's findings that there were "no substantial or significant ambiguities" in the agreement announced on the record, and that it was "clear and unequivocal," imply that the prosecution understood the concessions it was making precisely as Macrander understood those concessions.

implicate constitutional rights, and we therefore reject the People's argument. *See Fisher*, 657 P.2d at 927; *see also* Part II.C., *infra.*

### B.

The People argue next that even if the prosecution entered into a valid agreement with Macrander, the agreement is unenforceable for two reasons: First, it includes concessions not authorized by statute, and second, it is contrary to public policy.

The answer to both arguments is found in section 16–7–301(2)(c), 8A C.R.S. (1986), which specifically permits the prosecution to agree "[t]o seek or not to oppose the dismissal of other charges or not to prosecute other potential charges against the defendant if the defendant enters a plea of guilty...." The legislature's express grant of that authority, and its approval of plea agreements generally, disproves the People's claim that such agreements are void as against the public's interest. *See* § 16–7–301(1), 8A C.R.S. (1986) (authorizing plea agreements "[w]here it appears that the effective administration of criminal justice will thereby be served ...").[6]

### C.

■ Finally, the People argue that the order of specific performance of the plea agreement was an inappropriate remedy for the People's breach. We disagree.

A defendant is entitled to specific performance of a plea agreement when "no other remedy is appropriate to effectuate the accused's legitimate expectation engendered by the governmental promise." *Fisher*, 657 P.2d at 931.

In this case, the defendant's detrimental reliance was the waiver of his right to a preliminary hearing in Case No. 85CR1153.[7] The People argue that because the defendant had no constitutional right to a preliminary hearing, he is not entitled to enforcement of the plea agreement. In *Fisher*, however, we emphasized that:

> The right to enforcement does not depend upon proof that some independent constitutional right of the accused was impaired or implicated in the process.... Although the defendant's performance will ordinarily involve detrimental reliance in the form of a relinquishment of some constitutional right ... proof of such relinquishment is not an indispensable component of the defendant's claim for enforcement of the promise. Such proof, rather, renders the claim for performance or some equivalent substitute more compelling.

657 P.2d at 927.

The defendant was entitled, under Colorado statute and the Colorado Rules of Criminal Procedure, to demand a preliminary hearing. § 18–1–404, 8B C.R.S. (1986); Crim.P. 5(a)(4). The purpose of a preliminary hearing is "to screen out cases in which prosecution is unwarranted by allowing an impartial judge to determine whether there is probable cause to believe that the crime charged may have been committed by the defendant." *Rex v. Sullivan*, 194 Colo. 568, 571, 575 P.2d 408, 410 (1978). If the court determines that no probable cause exists to believe that the defendant committed the crimes charged,

6. Because the plea agreement at issue is of a type specifically authorized by statute, we do not determine here the circumstances in which the prosecution may assert as a defense that a promise it made was *ultra vires* or contrary to public policy. Of course, the common law defenses to contracts must yield where they are inconsistent with the constitutional demands of due process.

7. The defendant also contends that his entry of a guilty plea in Denver constituted detrimental reliance on the People's promise. The People point out, however, that Macrander's Denver plea was entered more than two months after his counsel learned that the People interpreted the plea agreement in a materially different manner. In light of the circumstances, it is questionable whether the defendant's plea in Denver was actually made in reliance on the agreement, or if it was, whether that reliance was reasonable.

The district court based its order of specific performance in part on its acknowledgment that it had no authority to permit the defendant's withdrawal of the Denver plea. The court entered no findings with respect to the reasonableness of the defendant's reliance on the plea agreement, however, and the record is insufficient to permit us to decide that issue here. Nonetheless, our disposition of this case renders it unnecessary for us to do so.

the defendant must be discharged and the charges dismissed. Crim.P. 5(a)(4)(IV).

The practical effect of a defendant's waiver of his right to a preliminary hearing is that he is deemed to have admitted that probable cause exists, *People v. District Court*, 184 Colo. 406, 521 P.2d 778 (1974), and thus his liberty may be restrained prior to trial either through incarceration or through conditions on his bail. For that reason, the waiver of the right to a preliminary hearing directly implicates constitutional interests. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Lucero v. District Court*, 188 Colo. 67, 70, 532 P.2d 955, 957 (1975) (right to preliminary hearing "has a constitutional foundation"). *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 14.2 at 246–47 (1984) (discussing constitutional right to determination of probable cause). In light of the importance of the preliminary hearing to the accused and the restraints to which he is subject in light of his waiver of a hearing, we will accord his request for specific performance substantial weight.

The People argue, nonetheless, that an appropriate remedy would be to restore the defendant's right to a preliminary hearing in Case No. 85CR1153. The district court, relying on *People v. District Court*, 184 Colo. 406, 521 P.2d 778 (1974), found that it was powerless to reinstate the defendant's right to a preliminary hearing. In that case, we found only that the defendant's effective waiver of his right to a preliminary hearing in county court precluded the district court from holding a preliminary hearing. 184 Colo. at 411, 521 P.2d at 780. Because Macrander's waiver was induced by a promise the prosecution later chose not to honor, it was involuntary and thus ineffective. As a consequence, the trial court had the power to reinstate the defendant's right to a preliminary hearing if it so desired.

Although the defendant's right to a preliminary hearing could have been restored, such a remedy would have done little to restore the defendant to the position in which he found himself prior to the waiver. As explained above, the real burden of his concession was that he consented to have his liberty restrained without a showing of probable cause. A preliminary hearing at this late date would still allow the defendant to challenge the charges against him as not based on probable cause, but it cannot restore to the defendant the immediacy of that challenge, *see* § 18–1–404, 8B C.R.S. (1986) (preliminary hearing must be held within reasonable time). In effect, by reneging on its promise and thus requiring the defendant to institute enforcement proceedings, the People have added nearly two years to the final disposition of the charges against the defendant. To order that the process be started anew, in this case, would hardly "render substantial justice to the defendant." *Fisher*, 657 P.2d at 930.

We conclude, therefore, that dismissal of Case No. 85CR954 was an appropriate remedy for the prosecution's failure to honor its promise in this case. The judgment of the district court is affirmed.