**Steven ST. JAMES, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 96SC580.**

Supreme Court of Colorado,
En Banc.

Dec. 8, 1997.

Chambers, Dansky and Hansen, P.C., David J. Dansky, Denver, for Petitioner.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Clemmie P. Engle, Senior Assistant Attorney General, Criminal Enforcement Section Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

This appeal involves an alleged breach of a plea agreement between the defendant, Steven M. St. James, and the prosecution. St. James filed a Crim. P. 35(c) motion alleging that the prosecution's statements at a sentencing hearing breached its promise to refrain from advocating a particular sentence. After considering "the totality of the circumstances under which the sentence was imposed," the trial court determined that "the sentence is appropriate and should not be modified." In *People v. St. James*, 931 P.2d 501 (Colo.App.1996), the court of appeals applied a de novo standard of review and affirmed the trial court's order denying St. James's Crim. P. 35(c) motion.[1] The court of appeals correctly applied a de novo standard of review in determining the meaning of the plea agreement. We hold, however, that the appropriate standard of appellate review for an alleged breach of a plea agreement is whether the trial court's determination was clearly erroneous. We therefore reverse and direct the court of appeals to remand the case to the trial court with directions that it apply the meaning of the agreement which we determined in our de novo review and decide whether the prosecution's comments at the sentencing hearing were a material and substantial breach of the plea agreement.

I.

On May 10, 1988, St. James pleaded guilty to a criminal information charging him with one count of felony theft by receiving[2] and one count of felony attempted possession of a vehicle without a vehicle identification number.[3] In return for his plea, the prosecution agreed to dismiss the remaining criminal charges as well as additional criminal actions pending in Boulder, Arapahoe, and Summit Counties.[4] The plea agreement also required the prosecution to refrain from "advocat[ing] a sentence to the Department of Corrections ... a sentence of probation ... [or] a sentence to Community Corrections." However, the prosecution expressly reserved the right to "place all of the appropriate facts before the Court for consideration."[5]

After entering his plea, St. James absconded and failed to appear for sentencing until he was apprehended three years later. However, the parties continued to abide by the terms of the plea agreement. In October 1991, the trial court conducted a sentencing hearing during which St. James and his at-

---

1. We granted certiorari to determine "[w]hether the court of appeals erred in determining that the prosecution did not breach its plea agreement with the defendant while addressing the trial court at the sentencing hearing."

2. *See* § 18-4-410, 6 C.R.S. (1997).

3. *See* § 18-2-101, 6 C.R.S. (1997) (criminal attempt); § 42-5-102, 11 C.R.S. (1997) (stolen motor vehicle).

4. The prosecution, in conjunction with the appropriate prosecutorial officers, agreed to dismiss the following pending actions: probation violation (Boulder County), theft and fraud by check (Arapahoe County), criminal solicitation and aggravated motor vehicle theft (Summit County).

5. The plea agreement provides in relevant part that

> [T]he District Attorney agrees not to advocate a sentence to the Department of Corrections; nor a sentence of probation; nor a sentence to Community Corrections. However, this stipulation shall not in any manner prevent the prosecution from placing all of the appropriate facts before the Court for consideration.

torney addressed the court, and the prosecution responded with the following remarks:

> Your Honor, the defendant's criminal history runs from basically the time he was 18 years old until the present date. Now, it's a continuous criminal history, time after time after time after time, he commits crimes.... I paint a different picture of Mr. St. James [than the one presented by defense counsel]. I paint a picture of Mr. St. James that he is a consummate con artist, and he knows precisely what he's done. And, yet, he only walks away with so few convictions.... And does he pay for [the cars involved in the charges]? No, he doesn't pay for them. And, yet, a few years later, in between the time he pled guilty in this case and the time he is here today [three years], he does the same thing again. He cons women or he convinces these women that they should be involved in these insurance scams....

The trial court sentenced St. James to fourteen years for theft by receiving, with a consecutive six-year sentence for attempted possession of a vehicle without a vehicle identification number.[6]

In May 1995, St. James filed a Crim. P. 35(c) motion alleging that the prosecution's remarks during the 1991 sentencing hearing breached the terms of the plea agreement and that his sentence should therefore be vacated and the action remanded for resentencing. St. James asserted that the prosecution's recitation of St. James's criminal history, coupled with statements that St. James was a "consummate con artist" who had repeatedly engaged in the type of criminal activity for which he was being sentenced, frustrated St. James's reasonable expectation that the prosecution would refrain from advocating a sentence. On May 25, 1995, the trial court, "[a]fter considering the totality of the circumstances under which the sentence was imposed," determined that "the sentence is appropriate and should not be modified." Thus, the trial court denied the Crim. P. 35(c) motion.

Applying a de novo standard of review, the court of appeals affirmed the trial court and held that the prosecution "did not agree to take 'no position' on sentencing. Rather,

[the prosecution] agreed only that [it] would not advocate a particular sentence, a more narrow promise." *St. James*, 931 P.2d at 503. The court reasoned that "the rhetoric defendant challenges falls short of the more inflammatory rhetoric" involved in other federal cases. *Id.* The court of appeals concluded that the prosecution's comments did not "violate any reasonable expectation arising under [St. James's] plea agreement." *Id.* at 504.

## II.

■ Interpreting the meaning of a plea agreement is strictly a question of law. The court of appeals properly applied a de novo standard of review in determining that the plea agreement called for the prosecution not to advocate a particular sentence. However, the court of appeals erroneously applied a de novo standard of review to decide whether the prosecutor's conduct violated the plea agreement.

### A.

The court of appeals began its analysis of whether the prosecutor's sentencing argument violated the plea agreement by expressing its understanding that "[t]he standard of reviewing a trial court's determination of a claim that a plea agreement has been breached is unsettled." *St. James*, 931 P.2d at 503. The court noted that the defendant did not seek an evidentiary hearing and never alleged that any extrinsic evidence was relevant to an interpretation of the plea agreement, but based his appeal solely on the transcript of the sentencing hearing. The court utilized the de novo standard of review because there were no contested facts before the trial court concerning either the interpretation of the plea agreement or the content of the prosecutor's sentencing argument. *Id.* Thus, the court of appeals "assume[d] without deciding" that the circumstances presented an issue of law for de novo review because St. James "did not seek an evidentiary hearing on his Crim. P. 35(c) motion and, on appeal, likewise does not allege that any extrinsic evidence is relevant to an interpretation of the stipulation." *Id.*

---

**6.** In 1994, the trial court reduced the theft by receiving sentence to eight years.

It is true that courts are divided concerning the standard of appellate review to be applied to a trial court's determination of whether a plea agreement has been violated. *See United States v. Pollard,* 959 F.2d 1011, 1022–23 (D.C.Cir.1992). Several courts employ a de novo standard. *See United States v. Cooper,* 70 F.3d 563, 565 (10th Cir.1995); *Allen v. Hadden,* 57 F.3d 1529, 1534 (10th Cir.1995); *United States v. O'Rourke,* 43 F.3d 82, 94 (3d Cir.1994); *Lucero v. Kerby,* 7 F.3d 1520, 1522 (10th Cir.1993); *United States v. Moscahlaidis,* 868 F.2d 1357, 1360 (3d Cir.1989). Other courts employ a clearly erroneous standard. *See United States v. Conner,* 930 F.2d 1073, 1076–77 (4th Cir. 1991); *Raulerson v. United States,* 901 F.2d 1009, 1012 (11th Cir.1990); *United States v. Ataya,* 864 F.2d 1324, 1327 (7th Cir.1988); *United States v. Parrilla–Marquez,* 825 F.2d 572, 578 (1st Cir.1987); *United States v. Wood,* 780 F.2d 929, 932 (11th Cir.1986); *State v. Wills,* 193 Wis.2d 273, 533 N.W.2d 165, 166 (1995).

It is not true that the standard of review to be applied to a trial court's determination of whether a plea agreement has been violated is unsettled in Colorado. In *People v. McCormick,* 859 P.2d 846 (Colo.1993), we considered the appropriate standard for reviewing violations of plea agreements. We granted certiorari specifically "to address the appropriate standard to be applied in determining whether a defendant has breached a plea agreement." *Id.* at 856.[7] We held that "[i]f a trial court's finding of a material and substantial breach is supported by evidence in the record, it will not be overturned on appeal unless the reviewing court is convinced that the finding is clearly erroneous." *Id.* at 858.

*McCormick* did not discuss the standard of review involved in determining the meaning of the plea agreement. Instead, *McCormick* reviewed the trial court's factual determination that the *defendant's* conduct discharged the prosecution from performing its obligations under the plea agreement. We discern no reason to depart from the clearly erroneous standard applied in *McCormick* merely because we are reviewing the *prosecution's* actions here. Regardless of which party allegedly violates a plea agreement, a trial court judge is in the best position to evaluate whether the conduct of a party exceeded the bounds of an agreement.

Appellate review of plea agreements often involves a blend of law and facts. Cases involving conduct that may have violated plea agreements can turn on an evaluation of demeanor conveyed through voice inflections or even facial expressions. *See Pollard,* 959 F.2d at 1023. Trial judges have an advantage in making factual determinations because they hear the evidence and observe the demeanor of witnesses. Accordingly, we have previously recognized that the trial court initially resolves disputed factual questions, which are subsequently reviewed under the clearly erroneous standard. *See People v. Thomas,* 853 P.2d 1147, 1149 (Colo.1993) (stating that "[d]eference is given to the trial court's findings of fact and, as long as there is support for them, [appellate courts] will not overturn such findings").

Because the determination of the meaning of a plea agreement is a question of law, de novo review is the proper standard for interpreting a party's obligation under a plea agreement. *See Pollard,* 959 F.2d at 1023. However, the more subtle question of whether a party has materially and substantially breached a plea agreement is left to the discretion of the trial court. *See McCormick,* 859 P.2d at 858. We therefore hold that the proper standard for reviewing a determination of whether a party has breached a plea agreement is whether the decision of the trial court was clearly erroneous.[8]

## B.

We next look to the findings of the trial court and conclude that it failed to determine

---

7. We also granted certiorari to address whether the compulsory joinder provisions of section 18–1–408(2), 8B C.R.S. (1986) precluded a subsequent prosecution for murder. *See McCormick,* 859 P.2d at 852.

8. A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.,* 333 U.S. 364, 375, 68 S.Ct. 525, 532, 92 L.Ed. 746 (1948).

both the meaning of the plea agreement and whether the conduct of the prosecutor breached its obligations. The proper standard for determining whether a party has breached its obligations under a plea agreement is whether its actions constituted a material and substantial breach. The trial court failed to apply this standard and merely reaffirmed the defendant's sentence. It is not possible to discern from the trial court order whether the trial court thought that there was no breach, or instead believed that no remedy was necessary for the breach because it had already reduced the sentence.

■■■ When a defendant reasonably and detrimentally relies on the prosecution's promises in a plea agreement, due process requires the enforcement of the plea agreement. *See id.* at 856; *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, the promise must be fulfilled."); *People v. Macrander,* 756 P.2d 356, 359 (Colo.1988) (same); *see also* ABA Standards for Criminal Justice, Prosecution & Defense Function § 3–4.2 at 88 (3d ed. 1993) ("A prosecutor should not fail to comply with a plea agreement, unless a defendant fails to comply ... or other extenuating circumstances are present."). However, not every breach by a party releases the other party from its promises under the agreement.[9] A party is released from its plea agreement obligations in situations where the other party materially and substantially breaches an obligation under the plea agreement. *See McCormick,* 859 P.2d at 857; *see also United States v. Barresse,* 115 F.3d 610, 612 (8th Cir.1997) (noting that "[w]hen the government fails to fulfill a material term of

a plea agreement, the defendant may seek ... to withdraw his plea"); *Rodriguez v. New Mexico,* 12 F.3d 175, 175 (10th Cir.1993) (recognizing that "only breaches of material promises will allow a court to conclude that a plea was involuntarily induced and thus constitutionally infirm"); *United States v. Johnson,* 582 F.2d 335, 337 (5th Cir.1978) (noting that the government breaches its plea agreement only when its conduct violates the essence of the plea bargain); *State v. Bangert,* 131 Wis.2d 246, 389 N.W.2d 12, 32 (1986) (recognizing that a party seeking to vacate a plea agreement has the burden of establishing " 'both the breach, and that the breach is sufficiently material to warrant releasing the party from its promises (prosecution or defense) before the same judge who accepted the plea, whenever possible' ") (quoting *State v. Rivest,* 106 Wis.2d 406, 316 N.W.2d 395, 399 (1982)); *State v. Clement,* 153 Wis.2d 287, 450 N.W.2d 789, 794 (App.1989) (noting that defendant has the burden to prove that a material and substantial breach of the plea agreement occurred).

■■■ In its written order, the trial court simply concluded that the "sentence is appropriate and should not be modified." The trial court did not determine whether the prosecution's actions constituted a material and substantial breach of the plea agreement. Nor did the trial court indicate whether, if there was a breach, it believed the defendant was not entitled to a remedy since the trial court had already reduced the sentence of the defendant. Because no determination was made by the trial court, the appellate function is hindered. The clearly erroneous standard of review cannot be applied in the absence of a resolution by the trial court of whether the prosecution's statements at the sentencing hearing materially and substantially breached its obligations under the plea agreement.[10] The court of ap-

---

9. A number of cases have concluded that an agreement not to take a position on the sentence or an agreement to stand mute at the sentencing hearing prohibits the prosecution from attempting to influence the sentencing judge. *See United States v. Avery,* 589 F.2d 906 (5th Cir.1979); *United States v. Crusco,* 536 F.2d 21 (3d Cir. 1976). However, efforts by the prosecution to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the

plea agreement. *See United States v. Johnson,* 582 F.2d 335 (5th Cir.1978); *United States v. Garcia,* 544 F.2d 681 (3d Cir.1976); ABA Standards for Criminal Justice, Prosecution & Defense Function § 3–6.2 (3d ed.1993) (discussing information relevant to sentencing).

10. In determining whether the prosecution's statements at the sentencing hearing breached the plea agreement, the court of appeals compared the prosecutor's statements in the present

peals correctly applied a de novo standard of review to determine the meaning of the plea agreement between St. James and the prosecutor. In applying this standard, the court of appeals examined the prosecution's promise to refrain from advocating a sentence to either the Department of Corrections, probation, or Community Corrections. The court determined that "the prosecution did not agree to take 'no position' on sentencing. Rather, it agreed only that it would not advocate for a particular sentence, a more narrow promise." *St. James,* 931 P.2d at 503. The court of appeals also noted that because the plea agreement did not prevent the prosecution from "placing all of the appropriate facts before the trial court," the prosecution had "some latitude in attempting to influence the sentence without actually commenting on the sentence itself." *Id.*

In conducting our de novo review, we determine that the meaning of the plea agreement is that the prosecution may not advocate for a particular sentence although it may place appropriate facts before the court. We hold that the court of appeals improperly assumed that a trial court's determination of whether a plea agreement has been breached is reviewed de novo. The appropriate standard of appellate review for an alleged breach of a plea agreement is whether the trial court's determination was clearly erroneous. It is necessary for the trial court to determine whether the prosecution breached the plea agreement, applying the meaning of the agreement which we have determined in our de novo review. We therefore reverse the judgment of the court of appeals.

case with the statements made in other federal cases and held that "[t]he rhetoric defendant challenges falls short of the more inflammatory rhetoric involved in cases relied on by defendant, such as *United States v. Moscahlaidis,* supra, and in other cases which have divided the courts." *St. James,* 931 P.2d at 503. In *Moscahlaidis,* the prosecution stipulated that it would not take a position relative to whether or not the trial court should impose a custodial sentence. *See Moscahlaidis,* 868 F.2d at 1358. The Third Circuit analyzed the alleged breach in the context of whether the statements contravened the express terms of the plea agreement and not whether the statements themselves were inflammatory. *See id.* Thus, we do not agree that *Moscahlaidis* turned on whether the contested statements were inflammatory.

## C.

For purposes of direction, we briefly address the remedies a trial court may grant if it determines that the prosecution materially and substantially breached its plea agreement obligations.

Generally, a defendant is entitled to specific performance of a plea agreement if " 'no other remedy is appropriate to effectuate the accused's legitimate expectation engendered by the governmental promise.' " *Macrander,* 756 P.2d at 361 (quoting *People v. Fisher* 657 P.2d 922, 931 (Colo.1983)). Therefore, the trial court must first consider whether it can fashion a remedy which effectively gives to the defendant that which the defendant legitimately expected. *See Macrander,* 756 P.2d at 361–62. When it is not possible to fashion such a remedy, specific performance must be considered. *See id.* Specific performance would entail resentencing before a judge other than the one who imposed the original sentence. *See Santobello,* 404 U.S. at 263, 92 S.Ct. at 499 (remanding to the discretion of the state court to determine "whether the circumstances ... require ... specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge"); *Brunelle v. United States,* 864 F.2d 64, 65 (8th Cir.1988) (remanding to trial court for new sentencing hearing and imposition of sentence "before a judge other than the one who imposed the sentence"); *United States v. McCray,* 849 F.2d 304, 305 (8th Cir.1988) (same); *People v. Davis,* 94 Ill.App.3d 809, 50 Ill.Dec. 616, 619, 419 N.E.2d 724, 727 (1981) (same).[11] Only under circumstances where

11. At least three United States Courts of Appeals have concluded that a remand for resentencing based upon the breach of a plea agreement by the government does not require resentencing by a different judge. *See United States v. Wolff,* 127 F.3d 84, 87–88 (D.C.Cir. 1997) (establishing three-part test to determine whether judicial reassignment is a necessary remedy when granting specific performance); *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984) (noting that "[r]emand to a different judge [for resentencing] is not the usual remedy, it is one reserved for 'unusual circumstances' ") (relying on *United States v. Arnett,* 628 F.2d 1162 (9th Cir. 1979)); *United States v. Bowler,* 585 F.2d 851, 856 (7th Cir.1978) (noting that "it is [not] necessary to have the resentencing before a different judge"). Other courts have determined that judicial reassignment is a necessary component of

specific performance is not possible must a trial court allow a defendant to withdraw the plea.

### III.

We reverse and return the case to the court of appeals to remand to the trial court with directions that the trial court decide whether the prosecution's comments at the sentencing hearing were a material and substantial breach of the agreement not to advocate a sentence, applying the meaning of the agreement which we have determined in our de novo review. The trial court shall also determine the ultimate relief to which St. James is entitled if it finds that the prosecution breached the plea agreement.

Chief Justice VOLLACK concurs in part and dissents in part, and Justice MULLARKEY joins in the concurrence and dissent.

Chief Justice VOLLACK concurring in part and dissenting in part:

I concur with the majority that the court of appeals erred in not applying a "clearly erroneous" standard in reviewing whether the plea agreement was breached. However, I disagree with the majority's decision to remand this case for an express determination as to whether the prosecution breached the plea agreement. In my view, remand is unnecessary because the trial court implicitly determined that the agreement was not breached. Furthermore, this determination was not clearly erroneous. Accordingly, I concur in part and dissent in part.

### I.

In 1991, defendant pled guilty to felony theft by receiving and felony attempted possession of a vehicle without a vehicle identification number. In return for defendant's plea, the prosecution made certain promises regarding sentencing in a written plea agreement:

[T]he [prosecution] agrees not to advocate a sentence to the Department of Corrections; nor a sentence of probation; nor a sentence to Community Corrections. However, this stipulation shall not in any manner prevent the prosecution from placing all of the appropriate facts before the Court for consideration.

At the sentencing hearing, the defense presented mitigating factors to the court, and the prosecution responded by recounting the defendant's criminal history.[12] The trial court sentenced the defendant to a total of twenty years in the Department of Corrections.[13] The defendant then filed a motion pursuant to Crim. P. 35(c), arguing that the prosecution breached the plea agreement because its comments at the sentencing hearing "advocated a sentence." The trial court denied the motion, stating that "[a]fter considering the totality of the circumstances ... this Court is persuaded that the sentence is appropriate and should not be modified." The court of appeals affirmed.

### II.

The majority remands this case because it concludes that the trial court made no determination as to whether the prosecution

---

the specific performance remedy. *See United States v. Hayes,* 946 F.2d 230, 236 (3d Cir.1991) ("If specific performance is elected, [defendant] must be resentenced by a different judge as dictated by the Supreme Court in *Santobello*."); *United States v. McCray,* 849 F.2d 304, 306 (8th Cir.1988) (per curiam) (noting that "[t]he Supreme Court [in *Santobello*] instructs us that when the government breaches a plea agreement, the defendant is entitled to be resentenced by a different judge").

12. The prosecution made the following comments at the sentencing hearing:

Your Honor, the defendant's criminal history runs from basically when he was 18 years old until the present date. Now, it's a continuous criminal history, time after time after time after time, he commits crimes....

. . . .

I paint a different picture of Mr. St. James [than the one presented by defense counsel]. I paint a picture of Mr. St. James that he is a consummate con artist, and he knows precisely what he's done. He's very smart at what he's doing, he's done it so often. And, yet, he only walks away with so few convictions.

. . . .

And does he pay for [the cars involved in the charges]? No, he doesn't pay a thing for them. And, yet, a few years later, in between the time he pled guilty in this case and the time he is here today, he does the same thing again. He cons women or convinces these women that they should be involved in these insurance scams....

13. Defendant's sentence was later reduced.

breached the plea agreement. I disagree. In my view, the trial court implicitly determined that the prosecution did not breach the agreement when it denied defendant's Crim. P. 35(c) motion. This motion raised only one issue: whether the prosecution breached the plea agreement. Thus, in denying the motion, the trial court simultaneously rejected defendant's contention that the prosecution breached the agreement.

The majority concludes, however, that in the absence of an express finding on the issue of breach, we cannot apply the clearly erroneous standard. I disagree. To apply the clearly erroneous standard, we need only judge whether the record supports the trial court's determination that the prosecution did not breach the plea agreement. *See People v. D.F.*, 933 P.2d 9, 14 (Colo.1997) (explaining that the "clearly erroneous" standard has been met if the trial court's findings are supported by the record). In the plea agreement, the prosecution promised "not to advocate a sentence." According to the majority, this provision means that the prosecution could not advocate a particular sentence. The record is devoid of any evidence that the prosecution advocated a particular sentence for the defendant.[14] Moreover, the agreement provides that it "shall not in any manner prevent the prosecution from placing all the appropriate facts before the Court for consideration." Thus, contrary to the defendant's assertions, the prosecution was free to recount defendant's criminal history during the sentencing hearing. Because the record supports the trial court's determination that the prosecution did not breach the agreement, this determination was not clearly erroneous.

### III.

In my view, remand is unnecessary. By denying defendant's Crim. P. 35(c) motion, the trial court implicitly determined that the prosecution did not breach the plea agreement. Furthermore, it is possible to review this determination using the "clearly erroneous" standard because the record contains all the evidence considered by the trial court. Remanding for an express finding would not provide any additional evidence; it would only force the trial court to restate its conclusion and unnecessarily consume judicial resources. Accordingly, I concur in part and dissent in part.

I am authorized to say that Justice MULLARKEY joins in this concurrence and dissent.

---

**14.** Defendant did not seek an evidentiary hearing on his Crim. P. 35(c) motion, nor did he present any extrinsic evidence of breach. Instead, the defendant relied solely on the transcript of the sentencing hearing to support his allegation. This transcript is fully reproduced in the record.