**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**MANAIA PEARSON, Defendant.**

High Court of American Samoa
Trial Division

CR No. 48-97
CR No. 23-99

January 25, 2000

Before RICHMOND, Associate Justice, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Frederick J. O'Brien, Assistant Attorney General
For Defendant, Stephen R. Ford

## ORDER DENYING MOTIONS TO WITHDRAW GUILTY PLEAS AND DIRECTING RESENTENCING

On August 9, 1999, Defendant Manaia Pearson ("Pearson") moved to withdraw his guilty pleas. During his sentencing on August 2, 1999, Pearson orally made the same motion, arguing ineffective assistance of counsel. He made the present motion on this ground for reconsideration of the Court's denial of the oral motion on August 2. Pearson also sought our reconsideration of the judgment and sentence to the same end, arguing breach of the plea agreement during sentencing by Plaintiff American Samoa Government ("ASG").

## Background

The plea agreement filed in these consolidated actions on June 11, 1999 was signed by Pearson, Assistant Public Defender Patricia Penn ("Penn"), Pearson's counsel at that time, and ASG's counsel. The agreement provided for Pearson's proposed pleas of guilty in CR No. 48-97 to the crimes of attempted burglary in the second degree, Count 1 of the Information as amended, and unlawful use of a weapon, Count 3 of the Information; and in CR No. 23-99 to the crime of attempted flight to avoid prosecution, Count 1 of the Information as amended. Upon the Court's acceptance of these pleas, ASG agreed to move for dismissal of the remaining counts in the Information in CR No. 48-97.

The plea agreement further stated that ASG would limit its sentencing recommendation in CR No. 48-97 to support of the probation officer's recommendation set forth in the presentence report, but that each side would be free to make its own sentencing recommendation in CR No. 23-99. The agreement expressly recognized that sentencing recommendations were not binding on the Court, and that the Court retained complete discretion to impose any punishment authorized by law.

In addition, the plea agreement provided that during the Court's inquiry into the facts of the offenses for the basis of the guilty pleas, Pearson would testify completely and truthfully about his knowledge of the removal of ASG's file in CR No. 48-97 from the Attorney General's

Office. Pearson was also to so testify, if necessary, at the preliminary examination and trial of any criminal prosecution for the file removal.[4] The agreement stipulated that ASG would not prosecute Pearson for any crime he may have committed in connection with the file removal.

On June 22, 1999, the plea agreement was presented to the Court. The Court ascertained that Pearson knew the nature of and maximum punishments for the offenses to which he agreed to enter pleas of guilty, admonished him of his constitutional rights in criminal prosecutions, and determined that he was not induced to enter the proposed pleas as a result of the use or threat of force against his person or of improper promises. We advised him that sentencing was in the Court's sole discretion and he would not be allowed to withdraw his guilty pleas if the Court did not accept counsel's sentencing recommendations. Pearson entered pleas of guilty and testified as proposed by the agreement. We found that his pleas were entered knowingly and voluntarily, with an attorney's advice, and upon a factual basis. We also granted ASG's motion to dismiss the remaining counts in CR No. 48-97.

On July 19, 1999, the initial date scheduled for sentencing, Pearson orally requested that he wanted counsel Penn replaced. We rescheduled sentencing to July 29, 1999 and directed Penn to file a proper motion to substitute counsel. That motion was filed on July 27, 1999, with Pearson's handwritten request attached. Sentencing was postponed to August 2, 1999. On August 2, Pearson separately filed another handwritten motion to substitute counsel. We denied both motions. Pearson then orally moved to withdraw his guilty pleas, alleging ineffective assistance of counsel. We denied that motion. The Probation Officer left the sentence up to the Court without any specific recommendation in the presentence report or at the sentencing. ASG recommended maximum, consecutive sentences of five years imprisonment each for the three offenses. Although ASG's recommendation was only incidental to our sentencing decision, we did

---

[4] Contemporaneously with the burglary of the Attorney General's Office, a burglary of the courthouse resulted in the removal of the court's file in CR No. 48-97. This action was then pending before Chief Justice Michael Kruse, who requested the assistance of the Public Defender to reconstruct the court's file. Unfortunately, the Public Defender provided the Clerk of the Court with the entire file of his office. The Public Defender's file may have included confidential attorney-client communications and attorney work product. Although the Chief Justice did not see the Public Defender's file and the Clerk made copies only of documents in that file that would normally be part of the court's file, the Chief Justice was concerned about any appearances of any inappropriate judicial conduct and recused himself from further proceedings in these actions. The case was then transferred to this court.

sentence Pearson to the maximum of five years' imprisonment on each of the three offenses, to run consecutively.

On August 9, 1999, Penn timely moved to reconsider the judgment and sentence and the motions to substitute counsel and to withdraw the guilty pleas. She also separately moved to be replaced as counsel. On August 11, 1999, we granted the motion to substitute counsel and scheduled due dates for filing briefs on the remaining two issues for reconsideration, Pearson on August 30, 1999, and ASG on September 8, 1999. Pearson's option to file a reply brief was left open. On August 13, 1999, Pearson's present counsel was appointed. Pearson also filed another handwritten motion to vacate the judgment and sentence. Pearson asked to withdraw his guilty pleas, again on grounds of ineffective assistance of counsel and added breach of the plea agreement by ASG's counsel. Pearson's present counsel filed a brief on August 30, 1999 that addresses these grounds.[5] Our discussion of the various pending motions will deal with these issues. Arguments were heard in due course on December 9, 1999, with Pearson and both counsel present.[6]

## Discussion

A. Ineffective Assistance of Counsel

Pearson argues that Penn, his prior counsel, rendered ineffective assistance as his attorney in several particulars urged in his handwritten brief filed on August 13, 1999, and his present counsel's brief filed on August 30, 1999. He asserts that he wished to proceed to trial. However, Pearson claims that he was never able to thoroughly discuss the case with Penn and was thus deprived of adequate opportunity to develop possible defenses to the charges against him. Instead, he states that Penn merely advised him that any judge would find him guilty and that this advice instilled in him fear of greater punishment. The situation led to the plea agreement. Pearson further asserts that Penn still did not fully advise him on the nature of all the charges against him, especially those to which he plead guilty, or the plea taking process, to enable him to make an informed decision about entering guilty pleas. He claims that

---

[5] ASG did not file a brief.

[6] Proceedings after August 13, 1999 became intertwined with various considerations and other proceedings, including: Pearson's handwritten request for leave to do legal research, which was scheduled for hearing on September 13, 1999 and later taken off-calendar; requests by Pearson's present counsel for a transcript of the sentencing; unavailability of ASG's counsel for a time; and the filing of Pearson's petition for a writ of habeas corpus, which was consolidated with similar writs filed by other inmates in CA No. 116-99, CA No. 117-99, and CA 118-99.

60

Penn only urged him to plead guilty to lower possible penalties and gain dismissal of some charges. He also states that Penn met with him only once after he entered the guilty pleas and did not give him a copy of the plea agreement until the night before the sentencing. In sum, Pearson claims that he received such ineffective assistance of counsel that his guilty pleas were effectively coerced and were not freely and voluntarily made. He therefore argues that he should be allowed to withdraw his guilty pleas.

The burden is on Pearson to show both that his counsel acted incompetently and that counsel's error would likely have resulted in a different outcome. *Saucily v. Tu`ufuli*, 6 A.S.R.2d 15, 20 (Trial Div. 1987). In order to overcome the strong presumption of effectiveness, a defendant attacking counsel's effectiveness must show specific unreasonable errors and a reasonable likelihood that absence of those errors would have changed the result of the case. *Id.* An attorney's legal advice is unconstitutionally deficient if it fails to meet the standard of "a reasonably competent attorney" in a criminal case. *McMann v. Richardson*, 397 U.S. 759, 770 (1970).

Counsel can meet the constitutional standard for effective assistance by advising a client to plead guilty if that advice falls within the range of competent representation under the circumstances. *Saucily*, 6 A.S.R.2d at 20 (quoting *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984)). A defendant cannot successfully claim he was coerced simply because he pled guilty after relying on counsel's recommendation. *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). The fear of receiving a greater sentence does not negate the voluntariness of a plea. Pearson does not allege, nor do we see any evidence to indicate, that his counsel used poor judgment in encouraging him to plead guilty.

The number and length of meetings between a defendant and his counsel do not alone determine whether counsel rendered adequate advice. One meeting between a defendant and counsel may be sufficient to afford the defendant an adequate opportunity to understand the plea. Pearson is an educated college graduate, and the plea agreement in this case was not complex. He has not indicated anything his counsel failed to explain that would have made him change his pleas. Counsel could not have informed Pearson that one possible outcome of pleading guilty would be a maximum sentence recommendation by the prosecutor, because as discussed below, ASG made this recommendation at the sentencing only upon learning of the Probation Officer's total deference to the Court to fashion the sentence. In fact, counsel's failure to tell Pearson of this possibility was not a failure by counsel at all.

A guilty plea is valid only if it is voluntarily and intelligently

made. *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea meets this standard if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* Pearson's ineffective assistance argument cannot form the basis of an involuntariness finding, because we have found that Pearson's counsel did not render ineffective assistance.

Furthermore, other evidence indicates that Pearson entered his plea voluntarily. We fully explained to him the terms of the plea agreement, the nature of the crimes to which he was pleading guilty, and the maximum punishment for those crimes. In addition, Pearson was fully advised of his constitutional rights in criminal prosecutions and that sentencing was in the sole discretion of the Court. Pearson was asked about the use or threat of force, and about any inducements other than the plea agreement to make him plead guilty. Pearson intelligently answered the Court's questions and gave every indication that he understood both our questions and other statements during the plea taking proceedings.

We find no evidence that Penn rendered ineffective legal assistance. Thus, we will deny Pearson's motion to reconsider the denial of his earlier motion to withdraw his guilty pleas on this ground. Once again, we find that Pearson knowingly and voluntarily entered his guilty pleas, with a competent attorney's advice, and upon a factual basis.

B. Violation of the Plea Agreement

In his handwritten brief filed on August 13, 1999, Pearson argued generally that ASG's counsel violated the plea agreement by failing to limit its sentencing recommendation to the probation officer's recommendation set forth the presentence report. In his counsel's brief filed on August 30, 1999, Pearson amplified that argument by stating that the specific violation occurred when ASG's counsel recommended consecutive terms of imprisonment. At the hearing on December 9, 1999, Pearson added that violation by ASG's counsel specifically encompassed his recommendation for the maximum sentence on all counts as well. Pearson asserts that ASG should not have made these specific recommendations because ASG agreed in the plea agreement to limit its recommendation to supporting the probation officer's recommendation in CR 48-97, and on that basis, he is entitled to withdraw his guilty pleas.

ASG filed no opposing brief, but in oral argument at hearing on December 9, 1999, ASG counsel argued that ASG had no duty to refrain from making a sentencing recommendation because the probation officer did not make any recommendation. According to ASG, the agreement not to make a recommendation was based on a condition that never came

to pass, the condition being that the probation officer make a sentencing recommendation.

 In the landmark case of *Santobello v. New York*, 404 U.S. 257, 262 (1971), the Supreme Court found that when a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." For a plea agreement to be valid, the government must honor its plea bargain with a defendant. *Id.* In determining the scope of a plea agreement, we look to the reasonable understanding of the parties. *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir. 1984).

In *Santobello*, the Court held that a sentence could not stand when a prosecutor promised to make no sentencing recommendation, but another prosecutor recommended the maximum sentence. 404 U.S. at 262. Similarly, in *United States v. Hayes*, 946 F.2d 230, 236 (3d Cir. 1991), the Court found that the defendant was prejudiced when the government advocated a sentence within the standard range in the guidelines when it had promised to make no recommendation as to the specific sentence. *Cf. United States v. Brummett*, 786 F.2d 720, 723 (6th Cir. 1986) (government admonished, but no violation found, when the agreement stated that there would be no recommendation as to the specific sentence and the prosecutor recommended "a lengthy period of incarceration").

 By recommending the maximum sentences for the two offenses in CR No. 48-97, ASG directly contravened the agreement in this case. ASG may not agree to make no sentencing recommendation beyond supporting the probation officer's recommendation for the two offenses in CR No. 48-97 and then, when the probation officer opted to make no particular recommendation, recommend a sentence, much less the maximum imprisonment for these two offenses. ASG could not go beyond recommending the maximum or some lesser term of imprisonment for the offense in CR No. 23-99. Despite ASG's contention, an agreement to limit a sentencing recommendation to what was stated in the presentencing report is a promise, not a condition. To allow ASG's interpretation would violate the unambiguous language of the plea agreement.

ASG also violated the plea agreement by recommending consecutive sentences for the three offenses. A recommendation for consecutive sentences, in practical terms, is a request that determines the length of imprisonment. *See Carbone*, 739 F.2d at 47 (violation when prosecutor agreed to make no sentencing recommendation on two counts, but then argued for a split sentence on those counts). To recommend consecutive sentences, other than to run the sentence for the offense in CR No. 23-99, is a request that also violates the plea agreement.

63

■ ASG's counsel probably committed the error inadvertently, in likely frustration over Pearson's relatively uninformative testimony when the guilty pleas were taken on June 22, 1999, and the Probation Officer's unexpected silence in recommending a sentence. Nonetheless, it is irrelevant whether the breach was intentional or not. *United States v. Grandinetti*, 564 F.2d 723, 727 (5th Cir.1977). A defendant is entitled to have the prosecutor live up to the negotiated bargain and a plea that was gained even in part on a prosecutor's unfulfilled promise violates the defendant's rights. *Santobello*, 404 U.S. at 262.

■ Even when the Court is uninfluenced by the prosecutor's sentencing recommendation, the interests of justice require that the defendant be entitled to relief. *Santobello*, 404 U.S. at 262. As the Third Circuit stated, "[t]he doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated." *Hayes*, 946 F.2d at 233 (internal quotes and cites omitted). There is therefore no such thing as harmless error in sentencing when a prosecutor has breached a plea agreement.

■ The Court in *Santobello* indicated two possible remedies when a plea bargain is violated by the government: specific performance of the agreement by resentencing the defendant or withdrawal of the guilty plea. 404 U.S. at 263. The proper remedy for breach of a promise to refrain from making a sentencing recommendation is resentencing before judges different than those who imposed the sentence. *St. James v. People*, 948 P.2d 1028, 1033 (Colo. 1997). Pearson is therefore entitled to resentencing by judges who were not on the sentencing panel on August 2, 1999, which was comprised of Associate Justice Richmond, Associate Judge Atiulagi, and Associate Judge Sagapolutele. Pearson's sentence will be vacated for this purpose. Because the Chief Justice has recused himself from this case, Pearson shall be resentenced by Acting Associate Justice Ward and one or two different associate judges.

■ Pearson's bail was revoked due to his flight from American Samoa, which is the basis of the prosecution in CR No. 23-99. He is still a flight risk. Moreover, his right to reasonable bail terminated upon the entry of his guilty pleas. Therefore, we will require Pearson to remain in custody without bail pending resentencing.

Pearson's present counsel has permanently departed American Samoa. Counsel consulted with other attorneys in his law firm during the course of the plea withdrawal proceedings. Because of his familiarity with this case, we will therefore appoint Barry I. Rose as Pearson's new counsel to conclude these proceedings.

64

## Order

1. Pearson's motions to withdraw his guilty pleas are denied. However, because of the breach of the plea agreement by ASG's counsel, Pearson's sentence is vacated, and these actions are transferred to Acting Associate Justice John L. Ward II for resentencing. Since he is still a flight risk, and no longer has any right to bail, Pearson shall remain in custody pending his resentencing.

2. Barry I. Rose is appointed as Pearson's counsel for further proceedings in these actions.

It is so ordered.