No. 22057.

FORREST LEE SMITH *v.* THE PEOPLE OF THE STATE OF COLORADO.
(428 P.2d 69)

Decided May 22, 1967.

---

DONALD W. STACEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS matter is here on a writ of error directed to the ruling of the trial court denying Smith's (plaintiff in error) motion to vacate and set aside his sentence under Colo. R. Crim. P.35 (b). The trial court denied the relief sought without a hearing.

The motion to vacate the judgment of guilty alleges, *inter alia*, the following: That Smith entered a plea of guilty to a charge of forgery on March 23, 1965; that on April 1, 1965, he was sentenced to a term of not less than ten and no more than fourteen years in the Colorado State Penitentiary; that the court accepted his plea of guilty while defendant was without counsel; that he "was coerced into entering a plea of guilty"; and that the probation officer of Mesa County exceeded his authority when he recommended the sentence and punishment which this court imposed.

The SUMMARY OF ARGUMENT assigns three errors which can be summarized as follows:

1. The trial court erred in denying defendant's motion to vacate sentence without a hearing, since "The existence or non-existence of coercion cannot be determined without going beyond the record in the trial court."

2. The court should have appointed counsel prior to accepting a guilty plea, since he did not understandingly and intelligently waive his right to counsel.

3. That he "was deprived of his constitutional rights in that the Probation Officer exceeded his statutory authority in recommending to the Court that Defendant receive a maxium sentence."

Assignments of error 1 and 2 are so interrelated in the record of this case that they will be discussed together. Rule 35(b) requires the trial court to cause notice of the motion to vacate "to be served on the prosecuting attorney," and "grant a prompt hearing," *"Unless the motion and the files and record of the case show to the satisfaction of the court that the prisoner is not entitled to relief. . . ."* (Emphasis added.)

The question thus presented to us in determining the correctness of the trial court's ruling is: Did *the motion, the files* and *the record* contain sufficient evidence, in and of themselves, to justify the court in ruling as it did?

The motion, prepared by the defendant pro se, contains these statements:

"(B) On or about March 23, 1965, the defendant entered his plea of guilty to the charge of Forgery, and in so doing, pending charges against him was withdrawn and dropped. . . .

"(E) That defendant was coerced into entering a plea of Guilty to the instant matter by the District Attorneys Office . . . by their promise of not filing any additional charges with respect to other checks defendant may have written prior. . . .

"(F) . . . by the threat of Habitual Criminal (C.R.S. 1953, 39-13-1). . . ."

The reporter's transcript of the proceedings on arraignment, so far as it relates to waiver of counsel, contains the following dialogue:

"MR SPIECKER: Your Honor, the Defendant, Forrest Lee Smith, is present in Court at this time for the

purpose of arraignment, and I have handed to the Defendant a copy of the Information filed herein, together with a copy of the current list of District Court Jurors.

"THE COURT: Very well, you may now rise, Mr. Smith.

"(Thereupon the Defendant stood up).

"THE COURT: And I will ask the Clerk to read the formal parts of the Information to you and the formal charge as contained in the Information. If you care to follow her through, you may do so by — she will — with your copy. She will start with the third line with the words 'that on or about January 2, 1965 —.' Do you see that?

"DEFENDANT SMITH: Yes, sir.

"THE COURT: All right.

"(Thereupon the Clerk read the Information).

"THE COURT: Mr. Spiecker, will you please advise the Defendant of his constitutional and statutory rights and the possible consequences in the event of a conviction or a plea of guilty in said matter?

"MR. SPIECKER: Mr. Smith, first of all, I would like to advise you that you are entitled to be represented by legal counsel in the event that you desire to have such. This can be an attorney of your own choosing, if you have the means to obtain your own attorney, but in the event you do not have the means to obtain your own attorney and still desire to have legal counsel, the Court can and will appoint an attorney to represent you. Do you understand that?

"DEFENDANT SMITH: Yes, sir.

"MR. SPIEKER: Secondly, upon a plea of not guilty you are entitled to a trial by Jury, unless that right is waived in writing, in which event the matter will be tried before the Court.

"In the event you enter a plea of not guilty and are subsequently found guilty, or in the event you voluntarily enter a plea of guilty, the Court could sentence you to a term of not less than one nor more than four-

teen years in the Colorado State Penitentiary. Do you understand that?

"DEFENDANT SMITH: Yes, sir.

"MR. SPIECKER: Do you have any questions about any of the matters that I have just stated to you?

"DEFENDANT SMITH: No, sir.

"THE COURT: Mr. Smith, what are your desires in this matter? Do you care to consult with an attorney? Do you desire some additional time in which to enter your plea, or do you desire to go forward at this time?

"DEFENDANT SMITH: I will go forward now.

"THE COURT: Do you feel as though you have made up your mind and you are sufficiently informed to enter a plea at this time? Keep it in mind, nobody is requesting that you do it.

"DEFENDANT SMITH: Yes, sir, I know that.

"THE COURT: You understand that?

"DEFENDANT SMITH: Yes, sir.

"THE COURT: How do you plead?

"DEFENDANT SMITH: Guilty.

"THE COURT: All right. Let me ask you some questions before accepting this plea. Has anyone made any promises to you or threatened you or any of the members of your family in exchange — or to entice a plea of this kind out of you?

"DEFENDANT SMITH: No, sir.

"THE COURT: Anybody use any undue influence or exertion (coercion) of any kind?

"DEFENDANT SMITH: No, sir.

"THE COURT: This plea, then, is offered voluntarily on your part?

"DEFENDANT SMITH: Yes, sir, it is.

"THE COURT: How much education have you had, Mr. Smith?

"DEFENDANT SMITH: Twelve years.

"THE COURT: In other words, you have gone through high school?

"DEFENDANT SMITH: Yes, sir.

"THE COURT: The Court is satisfied that the Defendant has been fully advised of his constitutional and statutory rights, and feeling that he understands the possible consequences of a crime of this kind if he is found guilty, or in the event he enters a plea of guilty, and feeling that he realizes and understands what he is doing, I will accept such a plea of guilty. Let the record so show."

*The fi'es* also contain an "affidavit" executed by Smith on March 31, 1965, before the probation officer, waiving his right to fi:e an application for probation and requesting the court "to proceed with the final hearing and disposition of this matter without further delay."

The "affidavit" concludes with this statement:

"There have been no threats or promises made to me regarding this matter and I have made the above waiver, refusal, and request as acts of my own free will and choice."

The testimony of Detective Landry of the Grand Junction Police Department was used to sustain the burden of proof on a plea of guilty. It shows that on March 22, 1965, in the presence of Captain Abbey, the defendant signed a typed statement relating to the commission of the crime which opened with this preface:

"I, FORREST LEE SMITH (32) Bates City, Mo. have been informed by Det. LANDRY of my right not to say anything until I have had counsil [sic]. And that anything I say may be used against me in a court of law. I do not wish to consult with an attorney. And I give the following statement on my own free will."

At the conclusion of the statement appeared the following in Smith's own handwriting:

"I have read the above statement and they are true to the best of my knowledge. There has been no threat or promise to make this statement."

The files also contain the Presentence Report which discloses that Smith "is a 32 year old divorced white male . . . He states that he graduated from High School

with good grades and has taken two vocational courses since then. His criminal record goes back 14 years or until about the time that he finished high school." Information furnished to the probation officer by a relative confirmed the "good grades" in high school and also his FBI record, in these words:

"He has been in & out of trouble since he was 17. It started out stealing then it was mostly bad checks. He has been in the State penitentiary of Colorado, Calif. & Missouri also county jails a number of times."

"To sustain a claim that counsel was waived, the record must show . . . that the accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L. Ed.2d 70. The quotations from the record constituted sufficient evidence from which the trial court could properly find that Smith intelligently and understandingly waived his right to counsel. See also *Frame v. Hudspeth*, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

It should be noted that the defendant did not allege that he did not understand the nature of the offense with which he was charged, nor did he allege that he had a defense to it. However, he claims that he was coerced into entering a plea of guilty by the threat of the filing of similar charges on other checks and an habitual criminal charge.

In effect, the defendant's 35(b) petition stated nothing more on this point than that he engaged in "plea bargaining." This allegation, standing alone, is not sufficient upon which to base a charge of coercion. It is apparent from the files and the record in this case that all of these charges could have been filed against him. It is not uncommon for prosecuting attorneys to agree to dismiss or not to file additional charges against the defendant in return for a guilty plea to certain charges.

We do not condemn this practice per se. As has

been aptly stated, "The important thing is not that there shall be no 'deal' or 'bargain,' but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced." *Cortez v. United States*, 337 F.2d 699. See also *Shelton v. United States*, 246 F.2d 571. The record shows that the prosecutor kept the bargain which he had made with Smith and charged him with no other or additional offenses. The record itself also amply shows, as we have pointed out, that the defendant well understood his situation, his rights, and the consequences of his plea.

▮ Under such circumstances, it is clear, therefore, that there was no requirement for a hearing on this allegation of the 35(b) petition. The facts disclosed by the record, on which the trial court based its ruling, are clearly distinguishable from those in *Roberts v. People*, 158 Colo. 76, 404 P.2d 848, and *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473, cited by plaintiff in error as authority for his position.

Defendant's third assignment of error, that he was deprived of his constitutional rights in that the probation officer exceeded his statutory authority in recommending to the court that defendant receive a maxium sentence, is bottomed on the proposition that the statutes do not expressly authorize the probation officer to recommend the sentence to be imposed. No cases are cited in support of the proposition.

The probation officer is appointed by "the judge or judges of the district court" and, before entering upon his duties, he is required to "take an oath of office as *an officer of the court.*" C.R.S. 1963, 39-16-1. (Emphasis added.)

Where the court has discretion as to the penalty it is required by law to cause the probation officer to make a background investigation of the defendant before the imposition of the sentence. C.R.S. 1963, 39-16-2. The investigation shall include any prior criminal record, the

567

defendant's characteristics, financial condition and circumstances affecting his behavior "as may be helpful in imposing sentence and *such other information as may be required by the court*, in order that the court may be fully informed concerning" the defendant. (Emphasis added.)

 The probation officer is an aide of the court. He furnishes specific kinds of information "and such other information as may be required by the court." The court uses, as it pleases, whatever information is furnished. The totality of discretion rests with the trial court in the imposition of sentence. A *recommendation* by the probation officer is nothing more nor less than *a recommendation*. We feel certain that recommendations in the area of sentences are made by probation officers only upon request by the court. The imposition of punishment is a most difficult facet in the administration of criminal justice. If a judge has such confidence in the opinion of his probation officer that he wants *a recommendation* as to a suggested sentence, we are not going to deny him that assistance. See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L. Ed. 1337.

The judgment is affirmed.

MR. JUSTICE McWILLIAMS not participating.