**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Timothy Wayne SANDERS, Defendant–Appellee.**

**No. 08CA2295.**

Colorado Court of Appeals, Div. IV.

Oct. 15, 2009.

Don Quick, District Attorney, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, for Plaintiff–Appellant.

Timothy Wayne Sanders, Pro Se.

Opinion by Judge WEBB.

The prosecution appeals the trial court's order sentencing defendant, Timothy Wayne Sanders, a sex offender who pled guilty to a misdemeanor charge of failing to register at an additional address, to two years of probation, because the court did not include sex offense-specific treatment, which the prosecution argues resulted in an illegal sentence [1]

.

Conditions of probation are not subject to appellate review "unless probation is granted contrary to the provisions of this title." § 18–1.3–104(1)(a), C.R.S.2009. Although we accept appeals where a condition of probation was based on "considerations not statutorily or constitutionally authorized," *see People v. Hernandez–Clavel,* 186 P.3d 96, 98 (Colo. App.2008) (*cert. granted* June 30, 2008, 2008 WL 2580193) (collecting cases), we discern no such ground here because, based on the information before the court when it imposed sentence, treatment was not mandatory. We further conclude that because in the plea disposition, the prosecutor agreed that it

would "take no position" on the sentence, the prosecution was barred from urging the court, months after Sanders had been sentenced, to require a second sex offense specific evaluation. Therefore, we do not consider whether that evaluation required the court to impose treatment.

### I. Factual Background

In October 1994, Sanders pled guilty to one count of sexual assault on a child, and several other counts were dismissed. He was sentenced to eight years imprisonment, which was modified by placing him in a community corrections sex offender treatment program. During Sanders's tenure in the facility, he admitted to fantasizing about having sex with a sixteen-year-old boy and to grooming the boy to engage in sex acts with him.

Sanders was arrested in November 2007 for failure to register as a sex offender. He had registered with the Brighton Police Department by listing two addresses—one in Brighton, where he resided, and the other in Thornton, where his mother lived. However, he had not registered with the Thornton Police Department for the Thornton address, where he frequently spent the night. A playground was immediately across the street.

Sanders was charged with a class six felony for failing to register under section 18–3–412.5(1)(a) and (2), C.R.S.2009. The prosecutor asked Sanders's attorney to obtain a preplea evaluation to determine, among other issues, whether Sanders should be required to undergo treatment. Sanders underwent an eight-hour psychosexual evaluation by a clinical psychologist registered with the Sex Offender Management Board (SOMB) in the treatment and evaluation of sex offenders.

This evaluation considered four sources of information about Sanders's sexual offense background: (1) a National Crime Information Center criminal history; (2) incomplete records from his community corrections treatment program; (3) a 2006 letter from his treating therapist stating why he was

---

1. Sanders did not object to his appellate counsel's motion to withdraw, which was granted. He has not filed an answer brief, although the order allowing his counsel to withdraw informed him that he was responsible for doing so and granted him additional time.

discharged from the treatment program; and (4) his own statements. It recommended appropriate supervision and monitoring, but the evaluator concluded that Sanders did not need sex offender treatment.

The parties entered into a plea disposition in May 2008. The prosecution dismissed the felony violation in exchange for Sanders's pleading guilty to a class one misdemeanor violation of section 18–3–412.5(1)(e) and (3), C.R.S.2009, failure to register as a sex offender. The prosecution agreed to waive the "two prior felony rule" found in section 18–1.3–201(2)(a), C.R.S.2009, which states that defendants with two or more prior felony convictions are not eligible for probation. The prosecutor also wrote on the written plea agreement that the prosecution would "take no position" on the sentence in the case.

The probation department conducted a presentence investigation and issued a report that incorporated the evaluation. Although the probation officer disagreed with the recommendation that Sanders did not need treatment, she did not raise any concerns about the evaluation's reliability.

The sentencing hearing was held in August 2008. The prosecutor who appeared at the hearing told the court that, although she was aware the presentence report recommended treatment, the prosecution was "not recommending" treatment and "would defer to the [c]ourt on that issue." The court placed Sanders on probation for two years without a condition that he undergo sex offender treatment.

A month later, Sanders asked the court to clarify his probation conditions because a new probation officer told him that he would be required to fulfill conditions that had not been ordered at the sentencing hearing. At the initial hearing on this issue, a new prosecutor and the new probation officer requested a second sex offense-specific evaluation.

As grounds for this request, the probation officer told the court that Sanders presented a high risk of recidivism. He said that the first evaluation did not address this risk because it did not comply with the standards for such evaluations that had been promulgated by the SOMB. Specifically, the probation officer asserted that the first evaluation

should have been prepared after Sanders had admitted his guilt. He explained that the first evaluation did not include important information, such as details of the original offense found in police reports, and the course of Sanders's progress through treatment. Sanders responded that the original prosecutor had not objected to the first evaluation and that the information supposedly omitted from that evaluation was not new.

Noting that Sanders had groomed a sixteen-year-old boy while incarcerated in a community corrections facility between 1994 and 1998, the trial court ordered Sanders to undergo a second evaluation. The evaluator who performed this evaluation considered information that had not been considered in the first one, including the presentence investigation, four monitoring polygraph examinations conducted between 2004 and 2006, and the police reports from the original 1994 offense. The second evaluation recommended that Sanders complete a modified offense-specific treatment program.

In October 2008, the trial court held a second hearing to determine whether it would modify the conditions of Sanders's probation by requiring him to participate in treatment. The court considered the second evaluation, and the prosecutor asked the court to impose treatment as a condition. The probation officer again told the court that it should not consider the first evaluation because it did not comply with the SOMB standards. Sanders responded that the prosecution was seeking to violate the plea disposition and should be "bound by what they stated at sentencing."

Relying on the first evaluation, the trial court declined to add a condition that Sanders participate in treatment. The court made several statements in the course of this ruling:

- The misdemeanor conviction for failure to register was not "a sex-offender offense."
- Sanders might commit another offense.
- Nevertheless, the prosecutor was bound by her statement at the original sentencing hearing that she would not take a position on sentencing unless Sanders

decided to withdraw his plea, which he did not do.

- Sanders's conduct leading to the felony failure to register charge was relatively minor, warranting a misdemeanor plea bargain and no sex offense-specific treatment.

## II. Legal Background

### A. Sex Offender Treatment Statutes

The prosecution's illegal sentence argument, which is the basis for invoking our appellate jurisdiction, depends, in part, on the following interconnected statutes:

1. Treatment plays a critical role in the supervision of sex offenders. Section 16–11.7–101, C.R.S.2009, states:

 The general assembly hereby declares that the comprehensive evaluation, identification, *treatment,* and continued monitoring of sex offenders who are subject to the supervision of the criminal justice system is necessary in order to work toward the elimination of recidivism by such offenders. Therefore, the general assembly hereby creates a program which standardizes the evaluation, identification, *treatment,* and continued monitoring of sex offenders at each stage of the criminal justice system so that such offenders will curtail recidivistic behavior and the protection of victims and potential victims will be enhanced.

 (Emphasis added.)

2. The program for standardizing evaluation, identification, treatment, and monitoring relies, in part, on the SOMB, which the legislature created as part of Colorado's department of public safety. § 16–11.7–103(1), C.R.S.2009.

3. Part of the evaluation process includes the creation of a risk assessment instrument designed to help trial courts evaluate the "likelihood" that a sex offender will commit additional sex offenses. § 16–11.7–103(4)(c.5), C.R.S.2009.

4. The SOMB establishes standards for evaluating and identifying sex offenders, and recommending monitoring and treatment, "based upon the knowledge that sex offenders are extremely habituated and that there is no known cure for the propensity to commit sex abuse." § 16–11.7–103(4)(a), C.R.S.2009.

5. The SOMB develops guidelines and standards for creating a system of treatment programs for all sex offenders, including those placed on probation. These programs are to be "as flexible as possible" so that each offender will be treated in a way that prevents him or her from harming victims and potential victims. § 16–11.7–103(4)(b), C.R.S.2009. These programs are to be developed in a way that, "to the extent possible," all sex offenders have access to them. *Id.*

6. The SOMB designates criteria for measuring the progress of sex offenders in treatment. These criteria are designed to assist courts, without limiting their decision-making authority, to determine whether sex offenders can be "appropriately" discharged from probation by, in part, assessing whether they pose "an undue threat to the community." § 16–11.7–103(4)(e), C.R.S.2009.

7. Any sex offender who is to be considered for probation must, among other obligations, submit to "an evaluation for treatment [and] an evaluation for risk." § 16–11.7–104(1), C.R.S.2009.

8. Every sex offender placed on probation "shall be required ... to undergo treatment to the extent appropriate to such offender based upon the recommendation of the evaluation and identification made pursuant to section 16–11.7–104." § 16–11.7–105(1), C.R.S.2009.

9. "The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life and to assist the defendant in doing so." § 18–1.3–204(1), C.R.S.2009. When placing a defendant on probation, a trial court must explicitly include the condition that the defendant "comply with any court orders regarding the treatment of sex offenders" imposed under sections 16–11.7–101 to –106, C.R.S.2009. § 18–1.3–204(1).

Our supreme court recently interpreted this statutory scheme in *Hernandez v. People,* 176 P.3d 746 (Colo.2008). The court first

determined that section 16–11.7–105(1) was ambiguous because the phrase that sex offenders "shall be required" to undergo treatment was inconsistent with the phrase that this requirement was imposed to the "extent appropriate to such offender based upon the recommendation of the evaluation." *Id.* at 752.

To resolve this ambiguity, the *Hernandez* court looked to the language in section 18–1.3–204(1), which provides trial courts with discretion to impose conditions of probation, and to statutory history. *Id.* at 752–55. This analysis led the supreme court to reach several conclusions:

- The statutory scheme requires sex offenders to undergo treatment only if appropriate for the offender and only to the level appropriate for the offender.
- This decision is based on the recommendations contained in an evaluation conducted pursuant to the SOMB standards.
- Therefore, trial courts have discretion to decide whether to order sex offenders to participate in treatment.
- However, this discretion is "tightly constrained" by the "statutory scheme's legislative intent to curtail recidivistic behavior and enhance victim safety, with the recognition that sex offenders are extremely habituated." *Id.* at 755.
- Because the statutory scheme "favors imposition" of treatment as a condition of probation, trial courts are required to order treatment when such a probationary condition is supported by the evaluation and its recommendations, and the facts of the case presently before the court. *Id.*

Based on *Hernandez*, the prosecution asserts that the second evaluation required the court to impose treatment as a condition of probation.

### B. Prosecutorial Promises

 The meaning of a plea agreement is a question of law subject to de novo review. *St. James v. People*, 948 P.2d 1028, 1032 (Colo.1997). "[W]hether a party has materially and substantially breached a plea agreement is left to the discretion of the trial court." *Id.* at 1031.

 Promises a prosecutor makes that are integral to plea dispositions must be kept. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "A plea agreement ... is more than merely a contract between two parties, and must be attended by constitutional safeguards to ensure that a defendant receives the performance that he is due." *People v. McCormick*, 859 P.2d 846, 856 (Colo.1993). These safeguards are embodied in due process principles that require the enforcement of almost all plea agreements in which defendants reasonably and detrimentally rely on prosecutorial promises and fulfill their side of the bargain. *Id.*

Our supreme court has recognized only two exceptions to this rule, as explained in cases such as *Keller v. People*, 29 P.3d 290, 295–96 (Colo.2000). One exception—that the defendant substantially and materially breached the plea agreement—does not apply here. The second exception—that the agreement produced an illegal sentence—is critical to the prosecution's position here.

 Normally, when the prosecution fails to adhere to a plea agreement, the trial court will enforce the prosecution's promise. *See Santobello*, 404 U.S. at 263, 92 S.Ct. 495; *People v. Macrander*, 756 P.2d 356, 359 (Colo.1988). However, the option of specific performance does not exist if the plea agreement involves an illegal sentence, because the parties cannot agree to an illegal sentence. An illegal sentence is invalid, which, in turn, renders the guilty plea invalid. *People v. Bottenfield*, 159 P.3d 643, 645 (Colo. App.2006). An illegal sentence may be corrected at any time, *see Craig v. People*, 986 P.2d 951, 966 (Colo.1999), and a defendant has no "right to benefit" from an illegal sentence. *People v. Dist. Court*, 673 P.2d 991, 997 (Colo.1983).

 A sentence is illegal if it does not fully comply with statutory requirements. *Delgado v. People*, 105 P.3d 634, 636 (Colo. 2005). Even though parts of a sentence are legal, such as its length, it may nonetheless be illegal because other aspects were entered contrary to law. *See id.* (illegal mandatory parole component); *Craig*, 986 P.2d at 960 (agreement to waive, modify, or eliminate

mandatory parole). "[A]s long as any aspect of a sentence is inconsistent with statutory requirements, the complete sentence is illegal." *Delgado,* 105 P.3d at 637.

According to the prosecution, after the second evaluation, the probation sentence without treatment triggered the illegal sentence exception.

### III. Analysis

■ At the original sentencing hearing, only the first evaluation, which did not recommend treatment, was before the court. Even accepting the prosecution's contention that *Hernandez* trumps trial court discretion, at that point the probationary sentence without treatment was legal. Thus, the prosecution could not then have withdrawn from its promise that it would not take a position on the sentence. *See Santobello,* 404 U.S. at 262, 92 S.Ct. 495; *McCormick,* 859 P.2d at 856; *Macrander,* 756 P.2d at 359.

Here, we do not interpret the prosecution's agreement to "take no position" on the sentence as leaving it free to advocate for a particular sentence on behalf of the probation department in a later sentencing proceeding. In general, "[t]he integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir.2000). And here, limiting the prosecution's agreement to standing mute at the sentencing hearing, but not thereafter, would deprive Sanders of the benefit of his bargain. *See United States v. Ewing,* 480 F.2d 1141, 1143 (5th Cir.1973) ("Surely when Ewing obtained the Government's promise not to oppose probation in exchange for his plea of guilty, he did so in the expectation that the benefits of that promise would be available throughout the proceedings relevant to the determination of his sentence."); *see also State v. Lankford,* 127 Idaho 608, 615, 903 P.2d 1305, 1311 (1995); *State v. Wills,* 244 Kan. 62, 70, 765 P.2d 1114, 1120 (1988). We consider these cases well reasoned and adopt them here.

Therefore, during the first hearing to clarify Sanders's probation conditions—where the new prosecutor and the new probation officer urged the trial court to order a second evaluation—the court should have held the prosecution to the conditions of the bargain it made, as Sanders properly argued, and denied the request for the second evaluation. The request for that evaluation was based on information known to the first probation officer, some of which appeared in the presentence investigation report. The prosecution cannot bootstrap the illegal sentence argument by using old information to obtain a second evaluation because the request was contrary to the plea agreement. *Cf. Pine v. People,* 168 Colo. 290, 295, 455 P.2d 868, 870 (1969) (rejecting bootstrap argument as basis to raise contention for first time on appeal).

We recognize that under the second evaluation, Sanders may have been required to undergo treatment. But had the trial court enforced the prosecutor's promise to take no position on sentencing at the first hearing, that evaluation would never have been performed. And the prosecution's illegal sentence argument fails without it.

Finally, we are not persuaded otherwise by either a court's jurisdiction to impose new conditions of probation under section 18–1.3–204(4), C.R.S.2009, or the status of probation officers as judicial branch employees. As to the former, we are unaware of any Colorado case interpreting section 18–1.3–204(4) to allow new conditions of probation to be imposed based on information predating the original sentence and known to the probation officer assigned to the case at that time. As to the latter, probation officers are not parties to criminal proceedings and no statute or case allows them to request new conditions of probation independent of the prosecution initiating such a process.

Therefore, we have no basis on which to disturb Sanders's sentence.

Judge ROMÁN concurs.

Judge BERNARD dissents.

Judge BERNARD dissenting.

As a basic principle, I strongly agree with the proposition that people should say what they mean and mean what they say. The criminal law breathes life into this proposition by requiring that prosecutors, as representatives of the government, must almost always be held to the promises they make when entering into plea dispositions.

But, "almost always" is not always. There are two exceptions to this paradigm, which are pointed out in the majority's opinion. I think that one of those, the imposition of an illegal sentence, is present here.

I would conclude that the trial court's ultimate decision declining to require defendant to participate in treatment resulted in an illegal sentence. I believe that the trial court made two legal mistakes that led to the illegal sentence. First, it relied on the wrong statute to conclude that defendant's guilty plea here disqualified him from the requirement that sex offenders participate in treatment. Second, once the trial court ordered and received the second evaluation, it is my view that the court was compelled to require defendant to participate in modified sex-offender treatment as a condition of probation.

I recognize that the road to the resolution of this appeal contains at least three exits that, if taken, would seem, upon initial consideration, to support the trial court's ultimate decision. First, the trial court's ultimate decision was merely a common, unremarkable exercise of judicial discretion. Second, the prosecution made a promise to take no position at sentencing, which it kept in the first sentencing hearing, but subsequently broke in a subsequent hearing. Third, courts should not change the conditions of probation if the reason for the change was known before the initial conditions were set.

However, although these exits may appear to lead to the proper destination, I am convinced by the factual and legal circumstances present in this case that they do not. Therefore, for the reasons expressed below, I respectfully dissent.

## I. Trial Court's Discretion

From my perspective, once the results of and recommendation in the second evaluation were before the court, the relevant law required the court to disregard the first evaluation, to rely upon the second, and to impose treatment as a condition of probation. When it did not, it imposed an illegal sentence.

## A. Sex Offender Treatment Statutes and *Hernandez*

Pedophiles represent a serious and continuing threat to the safety of children. Spurred by this legitimate and compelling concern, the General Assembly enacted a legislative scheme that is carefully designed to diagnose, treat, and, if necessary, incarcerate sex offenders. It is my view that the outcome of this appeal is governed by the series of statutes and the supreme court's opinion in *Hernandez v. People,* 176 P.3d 746, 752–55 (Colo.2008), which are accurately summarized in the majority's opinion.

Here, defendant was originally charged with several counts, which involved oral and anal sex with a thirteen-year-old boy and oral sex with an eleven-year old boy. In addition to grooming the sixteen-year-old boy for sexual purposes while incarcerated in the community corrections facility, defendant engaged in unsanctioned sexual conduct with other group members, and he never completed his sex offender treatment program.

Defendant escaped from the facility in 1998. He was apprehended; he pled guilty to the felony of attempted escape; his original sentence was converted to a prison sentence; and the court added a consecutive two-year sentence for the attempted escape conviction.

Defendant was paroled late in December in 2003. He enrolled in a second sex offender treatment program. He was discharged from this program, prior to completion, because he violated its conditions by repeatedly viewing pornography and having several unauthorized contacts with minors at a church. In an April 2006 letter, a therapist who treated defendant in this program wrote that defendant was a pedophile who posed a significant risk to molest children in the future. Defendant's parole was revoked and he was discharged unsuccessfully, partially because he did not complete sex offender treatment.

## B. Defendant Was a Sex Offender

In the course of declining to require defendant to participate in treatment, the court stated that the misdemeanor conviction for failure to register was not "a sex-offender

offense." Referring to sections 18–1.3–903(5) and 18–1.3–1007(1.5), C.R.S.2009, the trial court concluded that, because the offense presently before the court was not a felony, defendant was not a sex offender, and therefore treatment was not required.

This was a mistake of law because the trial court relied on the wrong statutes to reach this conclusion. Section 18–1.3–903(5) generally defines a "sex offender" as "a person convicted of a sex offense" for purposes of sentencing sex offenders. Section 18–1.3–1007(1.5) requires that persons convicted of a felony for failing to register as a sex offender "participate, as a condition of probation ... in the intensive supervision probation program."

However, section 16–11.7–105(1), C.R.S. 2009 specifically mandates that every sex offender placed on probation "shall be required ... to undergo treatment to the extent appropriate to such offender based upon the recommendation of the evaluation and identification made pursuant to section 16–11.7–104." Therefore, the definition of "sex offender" relevant to this discussion is found in section 16–11.7–102(2)(a)(II), (3)(d), C.R.S. 2009, not in sections 18–1.3–903(5) and 18–1.3–1007(1.5). *See* § 2–4–205 (special provisions normally prevail over general provisions); *Martin v. People,* 27 P.3d 846, 852 (Colo.2001) (same).

Under the proper definition, a "sex offender" is, as pertinent here, someone who has been previously convicted of sexual assault on a child. Defendant fell into this category because he had previously committed such an offense, and he was a sex offender for purposes of section 16–11.7–105(1).

### C. Application of the Statutes and *Hernandez*

The trial court was confronted here with two sex offender evaluations. The first did not recommend treatment; the second did. It is my view that, in light of the statutory scheme as it has been interpreted by *Hernandez,* the second evaluation trumped the first. This is because the second evaluation contained (1) information about defendant's conduct since his original conviction indicating that he represented a risk of recidivism; and (2) a recommendation that defendant be required to undergo a modified course of treatment that would allow him to "test out" of treatment that he did not need.

The discussion of the statutory scheme in *Hernandez* provides me with a basis for "breaking the tie" created by the different recommendations in the two evaluations. Initially, the first evaluation was defective because it violated several aspects of the SOMB standards.

Specifically, the evaluation was prepared before the plea, and, therefore, it fell outside the standards' requirement that an evaluation be prepared after a plea. Further, the evaluation was based only on defendant's descriptions of his original conviction and the recent crime, rather than on the police reports that were generated as a result of those offenses. *See* Colo. Sex Offender Mgmt. Bd., *Standards and Guidelines for the Treatment, Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* 22–25 (Mar.2008), *available at* http://dcj.state.co.us/odvsom/Sex_Offender/SO_Pdfs/2008% 20Adult% 20Standards% 20FINAL.pdf.

Second, the relevant statutes "tightly constrain" the trial court's discretion, focusing a trial court's decision-making on curtailing recidivism, protecting victims, and recognizing that sex offenders are "extremely habituated."

Third, the statutory scheme strongly favors the imposition of treatment. It accomplishes this goal by requiring trial courts to order sex offenders to undergo treatment when treatment is supported by the evaluation and its recommendations, and the facts of the case presently before the court.

Here, the second evaluation, not the first, was in line with the statutory scheme. Its contents, which I would presume under the statutes and *Hernandez* to be more reliable because they were generated consistently with the SOMB standards, indicate that defendant is an extremely habituated sex offender who poses a risk to the safety of additional victims. The facts of defendant's original case are disturbing, and his conduct after being released from prison indicates a perceptible risk of recidivism.

The facts of the present case show that defendant did not register as a sex offender as required by law. This suggests an enhanced risk to the safety of victims. *See People v. Lopez,* 140 P.3d 106, 108–09 (Colo. App.2005) (because sex offenders pose a continuous threat to society's safety, it is necessary to monitor their locations continually in order to protect society).

Therefore, following *Hernandez* and the statutory scheme, I would reach three interconnected conclusions. First, the trial court abused its tightly constrained discretion by declining to require defendant to undergo treatment because treatment was supported by the second evaluation, its recommendations, and the facts of the case presently before the court.

Second, this abuse of discretion resulted in a sentence that was based on considerations that were not statutorily authorized, because, under section 16–11.7–105(1), the evaluation and the facts of this case required defendant to undergo treatment. *See Hernandez,* 176 P.3d at 748.

Therefore, third, the sentence here was illegal. *See Delgado v. People,* 105 P.3d 634, 636 (Colo.2005) (the entire sentence is illegal if any aspect of the sentence is contrary to the statutory requirements); *People v. Wenzinger,* 155 P.3d 415, 418 (Colo.App.2006) (an illegal sentence is one that is contrary to the legislative sentencing scheme).

## II. The Prosecution's Promise

I concede, as I must, that the first evaluation was prepared at the prosecution's suggestion. Further, at the first sentencing hearing, the prosecution expressly left it to the trial court's discretion to decide whether to require defendant to participate in treatment.

But, I submit that it is crucial for the analysis here to recognize what the prosecution's promise was, and was not. The prosecution promised that it would take no position on the sentence to be imposed in the case, including a statement that it was "not recommending" treatment and "would defer to the [c]ourt on that issue."

The prosecution's promise was not the same as a sentence recommendation, or a stipulation, or a condition of the plea agreement, that the court would not impose treatment as a condition of probation. Rather, it is clear from the record that the plea agreement contemplated that the court would retain discretion to order defendant to participate in treatment. In other words, the court did not violate the terms of the plea agreement when it originally declined to impose treatment as a condition of probation, but it also would not have violated the agreement had it required that condition.

The prosecution's promise in this case is different from the promises made by the prosecutors in the cases cited by the majority. For example, in *United States v. Ewing,* 480 F.2d 1141, 1143 (5th Cir.1973), the prosecutor promised not to oppose a particular lenient sentence. Such a promise is distinguishable from a promise to take no position at sentencing. *See United States v. Feigenbaum,* 962 F.2d 230, 233–34 (2d Cir.1992) (citing similar holdings from the Third, Seventh, and Ninth Circuits).

I agree with the majority that the prosecutor broke that promise by urging the court to order the second evaluation, and then by arguing that defendant should be required to participate in treatment. *See St. James v. People,* 948 P.2d 1028, 1032 n. 9 (Colo.1997) ("A number of cases have concluded that an agreement not to take a position on the sentence or an agreement to stand mute at the sentencing hearing prohibits the prosecution from attempting to influence the sentencing judge. However, efforts by the prosecution to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement." (citations omitted)).

My disagreement with the majority is based upon my differing view of the effect of breaking that promise under the facts and law directly applicable here. The actual value of the prosecutor's commitment in this case was to remain mute during the sentencing hearing; it was not to restrict the scope of the trial court's sentencing discretion by promising to make a sentence recommendation. *See Feigenbaum,* 962 F.2d at 233–34; *People v. Wright,* 194 Colo. 448, 450, 573 P.2d 551, 553 (1978) ("[A] defendant should be

permitted to withdraw his guilty plea where the trial court chooses not to follow the prosecutor's *sentence recommendation,* regardless of whether the prosecution has promised that the court will follow the recommendation." (emphasis supplied)).

This is obviously important for my reasoning because a prosecutorial promise cannot tie a court to an illegal sentence. *See People v. Bottenfield,* 159 P.3d 643, 645–46 (Colo. App.2006) ("there cannot be a valid agreement to an illegal sentence"); *cf.* § 16–7–302(3), C.R.S.2009 ("Notwithstanding the reaching of a plea agreement between the district attorney and defense counsel or defendant, the judge in every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions."); Crim. P. 11(f)(5) (same).

The nature and the extent of the prosecution's promise are, therefore, critical factors in my analysis. As I explain in the next section, the limitations on the prosecutor's promise that I have described left the door open for the court, on its own authority and in response to the probation officer's comments, to order and consider the second evaluation. And, once the second evaluation was before the court, the court's "tightly constrained" discretion was limited to a single result—an order requiring defendant to participate in treatment—by the second evaluation's contents, by the relevant statutory scheme, and by *Hernandez.*

I do not minimize the importance of requiring prosecutors to keep their promises. The system and the public are poorly served, a great deal of court time and energy can be wasted, due process principles can be grievously offended, and defendants can be harshly and unfairly disadvantaged when prosecutors do not honor their word. Such an effect can be seen here in both the trial court's understandable confusion, and in defense counsel's obvious and warranted frustration.

There is great mischief in such prosecutorial inconsistency, as represented by the problems generated in the trial court by the prosecutor's original position, which led to an appeal that probably would not have been necessary had the prosecution thought its position through carefully before the plea disposition was first offered. However, if the

choice is between requiring a prosecutor to keep a promise that did not restrict the court's sentencing discretion, or invalidating an illegal sentence, *Keller v. People,* 29 P.3d 290, 295–96 (Colo.2000), instructs me to choose the latter.

### III. Changing the Conditions of Probation

Trial courts have jurisdiction to impose new conditions of probation once notice is given, a hearing is held upon request, and good cause is shown. § 18–1.3–204(4), C.R.S. 2009. This jurisdiction includes the ability to act on recommendations of probation officers. *See Smith v. People,* 162 Colo. 558, 566, 428 P.2d 69, 74 (1967) (probation officers make recommendations to the sentencing court).

Probation officers are officers of the court who are appointed by the court. §§ 13–3–105 & 16–11–208, C.R.S.2009. Their duties include investigating cases referred by the court; keeping the court informed of the "conduct and condition" of probationers; and using "all suitable methods" that are not inconsistent with the conditions imposed by the court to improve the "conduct and condition" of probationers. § 16–11–209(1), C.R.S. 2009; *cf.* § 18–1.3–1010(2)(a)(b), C.R.S.2009 (at any revocation proceeding, probation officer may make recommendations about level of treatment to be imposed if probation is not revoked; trial court shall consider recommendations).

Here, the probation department requested the treatment condition. Unlike the prosecution, the probation department consistently recommended that defendant be required to participate in treatment. I readily concede that the probation department is not a party to a criminal case, and it cannot establish conditions of plea agreements. However, it has a job to do that is separate from the prosecutor's job, which includes making recommendations to the court about the treatment of sex offenders.

I recognize that, had the second evaluation not been ordered and considered, the resolution of this case would be different. At the time of the original sentencing hearing, the prosecution made a promise—that it would take no position on whether defendant should be required to submit to treatment—and the

trial court's analysis was informed by the first evaluation, which did not recommend treatment. Therefore, the sentence was, at that point, legal.

But, things changed. The trial court held a hearing at which the prosecutor and the probation officer urged the court to order a second evaluation, partially because the original evaluation did not meet the SOMB standards. At this hearing, the trial court could have denied the request for a second evaluation, (1) informing the prosecutor that it would not consider the prosecution's comments because they were inconsistent with the prosecutor's promise; and (2) telling the probation officer that the court was not convinced of the need to order another evaluation.

However, the trial court did not do so. It ordered the second evaluation.

This was proper because the probation officer identified something that the trial court apparently did not know at the first sentencing hearing: the first evaluation was flawed because, contrary to the SOMB standards, it did not contain important information about defendant.

Further, the trial court retained its freedom to modify the conditions of defendant's probation because, as indicated above, the terms of the plea agreement did not prevent the trial court from imposing treatment as a condition of probation.

Things changed again. The second evaluation was submitted to the trial court, and the evaluation recommended that defendant be required to participate in treatment. As I have explained above, the introduction of the second evaluation into the court's analytical process fundamentally altered the discretionary calculus. It was at this point, when the court reaffirmed its decision declining to impose treatment as a condition of probation, that the court imposed the illegal sentence. The court's entire sentence became illegal because one aspect of that sentence—the decision concerning treatment—became inconsistent with the statutory requirements. *See Delgado,* 105 P.3d at 637.

Once the results of and recommendation in the second evaluation were before the court, the relevant statutory scheme and *Hernandez* combined to require the court to disregard the first evaluation, to rely upon the second, and to impose treatment as a condition of probation. Under section 18–1.3–204(4), the second evaluation provided the trial court with compelling good cause that required it to impose sex offender treatment as a new condition of defendant's probation.

For these reasons, I respectfully cannot join the majority's conclusion that the prosecution's appeal is a product of bootstrapping. This might be so had the imposition of treatment been directly contrary to the plea disposition; or had only the prosecution, and not the probation department, made the recommendations for the second evaluation and the added condition of treatment; or had the court not been informed that the original evaluation was inconsistent with the SOMB standards.

However, I respectfully submit that we cannot unring the bell sounded by the second evaluation, which was properly before the trial court. I believe that the relevant legislative scheme and *Hernandez* mandated that the trial court require defendant to participate in treatment once the second evaluation was before it. I believe this is so, even in the face of the prosecution's unfortunate inconsistency, because to do otherwise would interfere with a trial court's ability to modify its own probationary order when the circumstances justify, or, as in this case, require such a change.

### IV. Remedy

Last, I turn to the appropriate remedy. One option would be to vacate defendant's guilty plea because "the basis on which the defendant entered the plea included the impermissible inducement of an illegal sentence." *Chae v. People,* 780 P.2d 481, 486 (Colo.1989). However, as indicated above, the inducement—that the prosecutor would take no position at sentencing—was not designed to limit the trial court's discretion to impose treatment as a condition of probation.

I am mindful of our supreme court's teaching in *Delgado* that the cure for some illegal sentences consists of substituting a legal sentence. This would be, for me, the proper course under the circumstances present here. I would conclude that the proper remedy is to reverse the part of the sentencing order

declining to order defendant to participate in treatment, and remand to the trial court to require defendant, as a condition of probation, to participate in treatment as outlined in the second evaluation. I would reach this result (1) because the plea disposition contemplated that the trial court had the authority to order defendant to participate in treatment as a condition of probation; and (2) because I would conclude that the law and facts here mandated such a condition.